Argued 16 January, decided 19 March, 1907.

### MULTNOMAH COUNTY *v.* WILLAMETTE TOWING CO.

89 Pac. 389.

Pleading—Purpose of Making More Definite.

1. B. & C. Comp. § 86, authorizing the court to require a pleading so indefinite that the precise nature of the charge or defense is not apparent to be amended, only applies to a pleading containing a defective or vague statement of a good cause of action or defense, and to defects on the face of the pleading, and not to matters omitted which the opposite party desires inserted in order to demur to them.

Appeal After Second Trial—Reviewing First Trial.

2. Where a new trial is awarded, errors committed on the first trial will not be considered on appeal from the second trial.

DUTY OF COURT IN DETERMINING MOTION FOR NEW TRIAL.

3. The trial judge should grant a new trial, if in his opinion the evidence is insufficient in law or fact to support the verdict, or the verdict is unjust.

APPEAL—REVIEW—ORDER FOR NEW TRIAL.

4. The granting of a new trial is an interlocutory order involving the merits, and is reviewable on an appeal from the judgment on the new trial.

REVIEWING ORDER GRANTING NEW TRIAL—DISCRETION OF LOWER COURT.

5. Granting a new trial is within the sound discretion of the court, and will not be disturbed on appeal, where there is a substantial conflict in the testimony on essential facts.

BILL OF EXCEPTIONS—ATTACHING EVIDENCE BY REFERENCE.

6. Where the bill of exceptions does not include within itself any part of the evidence in the case, but contains a statement that the testimony and certain documents designated as exhibits are annexed to and made a part of the bill, and for the purpose of identification are locked in several trunks and delivered to the clerk of the court with instructions to transmit them to the clerk of the appellate court, neither the evidence nor the exhibits being physically attached to the bill, or certified or identified by the trial judge, such evidence and exhibits are not properly in the record, and should not be considered.

TORTS—SHIPPING—JOINT AND SEVERAL LIABILITY.

7. If an injury to a bridge by a passing vessel is caused by negligence in undertaking the voyage under the circumstances, and that negligence was the proximate cause of the injury, all persons controlling or participating in the voyage will be jointly and severally liable; but if the injury was due to negligent navigation after the voyage was begun, those concerned in the navigation will be alone liable.

SHIPPING—CHARTER—LIABILITY FOR MANAGEMENT OF VESSEL.

8. A charter party which leaves the vessel in charge of a master employed by the owners, who are to furnish a full complement of men, provide provisions, pay expenses (except fuel, port charges; expenses of loading and the like), is not a demise of the vessel, but a freighting contract, and the charterer is not liable for the acts of the officers and crew in the management of the vessel.

APPEAL—WEIGHT OF CONFLICTING EVIDENCE—NEW TRIAL.

9. A consideration of the evidence satisfies the court that the weight of the testimony in this case was not so clearly in plaintiff's favor as to justify the conclusion that the trial court erred in granting defendants a new trial.

NEGLIGENCE—PROOFS PERMISSIBLE UNDER GENERAL DENIALS.

10. In actions for damages caused by negligence, though caused by a vessel, defendants can show under a general denial that the acts causing the injury were done by persons for whose negligence they were not liable, this being a denial of a merely evidentiary matter and not of the cause of action. This right based on the denials is not affected by the fact that affirmative defenses stating the negligence of such other persons were rejected by the court on motions and demurrers.

PLEADING—RULE AS TO PROOF UNDER GENERAL DENIALS.

11. Any fact which in effect admits the cause of action, but attempts to avoid its force and effect, must be affirmatively pleaded; but evidence which controverts facts necessary to be proved by plaintiff may be shown under a general denial.

CHANGING VENUE—DISCRETION—REVIEW.

12. The right to grant a change of venue rests in the sound discretion of the trial court, and its decision will not be disturbed, unless there is a clear abuse of discretion.

JURY—COMPETENCY OF TAXPAYER IN ACTION AGAINST HIS COUNTY.

13. In an act on by or against a county for damages, a taxpayer thereof may be challenged by either party for implied bias.

STIPULATIONS—EFFECT—CHALLENGE OF JURORS.

14. An oral stipulation in open court to select the jury from the jury list, and waive right to challenge for implied bias, does not relate to future trials.

EVIDENCE COMPETENT TO EXPLAIN OPPONENT'S TESTIMONY.

15. In an action against the charterer of a vessel to recover for injuries to a bridge, where defendant denied responsibility for the navigation of the vessel, evidence to show how one of defendant's employees happened to be on board at the time is competent.

RES GESTAE—EXPLANATORY EVIDENCE.

16. In an action to recover for injury to a bridge by a vessel passing through under its own steam, but assisted for steering purposes by a tugboat, the defense by the tugboat company being that the injury was caused by interference with the navigation of the vessel by her captain, without consulting the pilot, testimony as to what the captain of the vessel said at the time or immediately after giving the order is competent as a part of the *res gestae.*

COMPETENCY OF OPINION EVIDENCE—CASE UNDER CONSIDERATION.

17. In an action to recover damages from a towing company for negligently towing a vessel against a bridge instead of through its draw opening, a witness who had many times passed through that bridge on vessels under tow, had watched their navigation, and was familiar with the circumstances of the accident in question, having been on the deck of the vessel when she struck the bridge, is competent to express an opinion as to how the mishap occurred and what caused it, this being a case where a witness combines a statement of what he saw with a statement of his deduction therefrom, which is sometimes permissible.

OPINION WITNESS—DUTY TO DETERMINE QUALIFICATION—DISCRETION.

18. The qualification of a witness to express an opinion is a question of fact for the trial judge, whose finding will not be disturbed, except for abuse of discretion.

WITNESS—PROPRIETY AND SCOPE OF CROSS-EXAMINATION.

19. It is not proper cross-examination to ask a witness concerning matters stated in a pleading that he had never seen and was not bound by, and about which he had not been asked in chief.

COMPETENCY OF CONTRADICTORY EVIDENCE.

20. It is competent for a party to an action to state what he did in reference to the occurrence in question and when he did it, as presenting his version of the case in opposition to the version of the other side.

In an action against a lumber company to recover for injury to a bridge by a passing vessel chartered by defendants, plaintiff charged defendants with participation in the negligent navigation of the vessel. *Held,* that testimony by defendants' manager that the officers of the company had nothing to do with the navigation of the vessel, and that his

orders to the master to take his vessel to a dock beyond the bridge were not given on the day the attempt was made, was competent.

TRIAL—ORDER OF RECEIVING EVIDENCE—DISCRETION.

21. In the trial of a case a large discretion must rest with the judge as to the order of receiving proof and the examination of witnesses, and a refusal to permit a plaintiff to read to the jury a paper identified by defendant on cross-examination will not be reviewed, as plaintiff was not entitled—except by permission—to offer further evidence after closing its case.

ARBITRATION AND AWARD—AWARD AS EVIDENCE—PARTICULAR ISSUES—DIFFERENT PARTIES.

22. In an action to recover for injury to a bridge by a passing vessel in which the owners of the vessel were not parties, an award by arbitrators in a controversy between the owners and defendant lumber company, the charterer, is not admissible in evidence; the parties being different, and the matter of the award not being the same as that of the action.

TRIAL—DIRECTING VERDICT ON CONFLICTING EVIDENCE.

23. A trial judge acts clearly within his discretion in refusing to direct a verdict where the evidence is conflicting as to the actual occurrences and the credibility of witnesses.

From Clackamas: THOMAS A. McBRIDE, Judge.

Statement by MR. CHIEF JUSTICE BEAN.

This is an action to recover damages caused by the steamship Almond Branch fouling the Morrison Street Bridge. The Almond Branch is an English ship of 3,461 tons register, and was in Portland under charter to the Pacific Export Lumber Co. On February 19, 1901, she had taken part of a cargo of lumber at a dock south of Morrison Street, and her captain was directed by the charterer to drop down to the North Pacific Lumber Co.'s dock to receive the remainder. To do so it was necessary to pass through the draws of both the Madison and the Morrison Street Bridges. The river at the time was 14 feet above low water, and there was a current of about three miles an hour. The captain requested the lumber company to secure two tow-boats to assist in taking the vessel through the harbor, but the steamer Vulcan, of which the defendant Mitchell was captain, belonging to the Willamette & Columbia River Towing Co., was the only one available, and with her lashed to the port side aft of the Almond Branch to assist in steering, the voyage was begun with the defendant Emken as pilot. The vessels passed safely through the draw of the Madison Street Bridge, but, while

backing through the draw at Morrison Street, the Almond Branch fouled the bridge and injured it to such an extent that the plaintiff county was compelled to and did pay out $5,682.82 for necessary repairs. This action is brought by the county, the owner of the bridge, against the towing company, William Mitchell, captain of the Vulcan, Harry Emken, the pilot, and the Pacific Export Lumber Co., the charterer of the Almond Branch, to recover treble the amount of such damages, under Section 4044, B. & C. Comp.

The complaint alleges that the defendant towing company as a towing company, the defendant Emken as pilot, and defendant Mitchell as captain of the towboat Vulcan, took control of the Almond Branch and negligently, carelessly and recklessly attempted to tow and navigate her from a point south of the Morrison Street Bridge to a point north thereof with only one small towboat, the Vulcan, lashed opposite her stern; that the Vulcan was too small, and did not have power sufficient safely to handle the Almond Branch, and was carelessly and negligently lashed to the stern, instead of opposite the bow; that the defendants navigated the Vulcan and the Almond Branch in such a reckless, careless and negligent manner that such vessels crashed into the Morrison Street Bridge with great force, injuring and damaging the bridge as stated; that it was gross negligence to attempt to make the voyage at the time with only one towboat, and especially careless to lash such boat to the stern of the Almond Branch; that after the voyage was begun the defendants had great difficulty in getting the vessels in position to pass through the draw of the Morrison Street Bridge, and were compelled to and did use the steam power of the Almond Branch in connection with that of the Vulcan to navigate such vessels up stream to get them in position to pass through, and could have, without difficulty, discontinued the voyage, but they negligently and recklessly proceeded in their hazardous and negligent employment of attempting to tow the Almond Branch through the draw with only one towboat; that ordinary care and prudence required the power of two steamers, one lashed to the

stern, and one to the bow of the Almond Branch, in addition
to her own steam, to counteract the effect of the current and
safely and prudently to navigate her through the bridge; that
the defendants were guilty of gross negligence in failing to take
such precaution; that the Pacific Export Lumber Co. employed
the other defendants to do the acts set forth, with knowledge
that such acts were dangerous and liable to injure the bridge.

The towing company and William Mitchell, answering jointly,
denied all the acts of negligence charged in the complaint, and
affirmatively alleged, in substance, that the Morrison Street
Bridge was an unlawful obstruction to navigation, and while
the Almond Branch was being backed down through the draw
under her own steam, which was the ordinary and prudent course
to pursue, her master gave an order to her engineer to go full
speed ahead, thereby causing the vessel to swing around and
strike the bridge.  To this answer a demurrer was sustained,
and defendants filed an amended answer, alleging substantially
the same facts, to which a demurrer was likewise sustained. They
thereupon filed a second amended answer, denying all the ma-
terial allegations of the complaint, and affirmatively setting
forth:  (1) The act of the legislature authorizing the construc-
tion of the Morrison Street Bridge; the location of such bridge
with reference to the other bridges in the harbor; that the bridge
was not constructed and maintained so as not injuriously to im-
pede and obstruct the free navigation of the river, as required
by the law authorizing its construction; and that such bridge
was and is a hindrance and impediment to navigation.  (2) That
the Almond Branch was a vessel lawfully navigating the waters
of the Willamette River, under the control and in the possession
of her master, who was appointed and paid by the owners; that
the owners of the vessel, through their agent, applied to the
defendant towing company for the use of the steamboat Vulcan
for the purpose of facilitating the steering of the steamship
through the drawbridges in the harbor, the Vulcan and her crew
to be under the control of the master and pilot of the Almond
Branch and subject to their orders; that the towing company

thereupon furnished the Vulcan, a powerful towboat, in good condition and order and properly equipped and manned for the purpose and use stated; that such boat was made fast to the steamship Almond Branch by the direction of her master, and the vessels proceeded down stream stern foremost, as was prudent and the usual manner of navigating under such circumstances, the Almond Branch being under her own steam, and both vessels under the control and charge of the master and pilot of the Almond Branch, whose orders were given from the navigating bridge; that such vessels proceeded safely through the draw of the Madison Street Bridge, but in passing through the draw of the Morrison Street Bridge, without any fault or negligence on the part of the answering defendants, or the Vulcan, or any of her officers or crew, and while the Vulcan was under the control and direction of the master of the Almond Branch and obeying all orders given from the bridge thereof, the Almond *Branch came into collision with* the Morrison Street Bridge, damaging the same to an extent unknown to the defendants, but the Vulcan herself did no damage to the bridge, and no act or omission of the Vulcan, her officers or crew, contributed to the collision. (3) That the river was at the time more than 10 feet above low water, and Morrison Street Bridge is so constructed that, when the water is above the stage mentioned, the current is changeable, and it is impossible for reasonably skillful and prudent sailors and navigators to foresee a change in the direction of the current through the drawbridge in advance of the arrival of the vessel; that due precaution had been taken by the master and pilot of the Almond Branch for her navigation through the draw, and any damage sustained by the plaintiff was caused solely by reason of an unexpected and sudden change in the current which could not reasonably have been anticipated by prudent navigators and pilots, and such accident occurred wholly without the fault of any of the defendant's officers. A demurrer was sustained to that portion of the answer setting up that the Morrison Street Bridge was an unlawful obstruction to navigation, and a motion was interposed to make the remainder

of the answer more definite or to strike out such answer as frivolous, immaterial and irrelevant. This motion was overruled, and plaintiff replied.

The defendants the lumber company and Emken each answered separately, denying and alleging substantially the same matters and facts as set up in the original answer of the towing company and Mitchell. Demurrers were sustained to these answers, and amended answers filed. The lumber company, by its amended answer, denied the negligence charged in the complaint; denied that it hired or employed any of the parties in charge of the Almond Branch or the Vulcan at the time of the accident, or in any way controlled or directed their conduct, or was responsible for their acts; and affirmatively alleged: (1) That it was merely the charterer of the Almond Branch and had no control over her navigation, and that it did not employ the Vulcan or any of its co-defendants to tow or pilot the vessel or assist in any manner in her navigation, and did not attempt to control any of them in or about the matters and things alleged in the complaint. (2) That the Morrison Street Bridge is not constructed or maintained in accordance with the act of the legislature authorizing its construction, and is an unlawful hindrance and obstruction to navigation, and that the accident complained of occurred solely on account of the faulty construction of the bridge. (3) That by reason of the delay of the Almond Branch, due to its collision with the Morrison Street Bridge, on account of the faulty and improper construction of such bridge, the defendants and charterers of the vessel were damaged in the sum of $2,793.58, for which it demands judgment against the plaintiff. A demurrer was sustained to that part of the answer setting up that the Morrison Street Bridge was an unlawful obstruction to navigation and to the alleged counterclaim. A reply was filed to the remainder of the answer. Emken, by his amended answer, denied the several acts of negligence charged in the complaint, denied that he undertook to or did act as pilot of the Almond Branch on the voyage referred to and mentioned in the complaint, or that he steered or managed such vessel.

Upon the issues thus made, the cause was tried before Judge Sears and a jury in Multnomah County, and resulted in a verdict in favor of the plaintiff. On motion of the defendants, the verdict was set aside, and a new trial granted for insufficiency of evidence to justify the verdict. The place of trial was thereupon changed to Clackamas County, on motion of the defendants, because of alleged prejudice against them in Multnomah County, and the cause was again tried in Clackamas County before Judge McBride and a jury, resulting in a verdict in favor of the defendants. Judgment was rendered on the verdict, and plaintiff appeals, assigning numerous errors which will be referred to in the opinion so far as deemed important.

AFFIRMED.

For appellant there was a brief with an oral argument by *Mr. Ralph Roloefson Duniway.*

For respondents there was a brief over the names of *Williams, Wood & Linthicum, John Couch Flanders* and *Cake & Cake,* with oral arguments by *Mr. Flanders* and *Mr. William Marion Cake.*

MR. CHIEF JUSTICE BEAN delivered the opinion.

1. It is claimed that it was error to deny plaintiff's motion to make the second amended answer of the defendants towing company and William Mitchell more definite and certain. The motion sets out at length the averments which counsel desires inserted in the pleading and which he says in his brief are "the vital portions of the two former answers, which had been purposely cut out of the second amended answer by the defendants, to try to keep said second amended answer from being demurrable." Where the allegations of a pleading are so indefinite or uncertain that the precise nature of the charge or defense is not apparent, the court may require the pleading to be made more definite by amendment (Section 86, B. & C. Comp.); but this remedy is only applicable when the pleading contains a defective or vague statement of a good cause of action or defense, and is designed to cure such defects as appear upon the

face of the pleading itself. It is not the province of the court on such a motion to require the pleader to state the evidence upon which he relies or amend his pleading for the purpose of enabling his adversary to demur: 6 Enc. Pl. & Pr. 275; *Johnson* v. *Wilcox Sewing Machine Co.* (C. C.) 25 Fed. 373. The motion here was not directed against vague or uncertain allegations of a pleading, but was to require the defendants to insert therein new and independent allegations prepared and framed by their adversary, and we know of no rule of law authorizing or sanctioning such a practice.

2. There were many questions argued at the hearing based on alleged errors committed during the trial in Multnomah County; but, as the verdict was set aside and a new trial awarded, such questions are immaterial on this appeal. The order granting the new trial left the case as though no trial had taken place (*Edwards* v. *Edwards*, 22 Ill. 121; *Hollenbeck* v. *City of Marshalltown*, 62 Iowa, 21: 17 N. W. 155), and rulings affecting the previous trial become of no consequence.

3. But, it is contended that it was error to set aside the verdict and grant a new trial. The verdict was set aside, and the new trial granted, under Section 174, B. & C. Comp., for insufficiency of the evidence to justify the verdict. It is not only the right but the duty of a trial court, in passing on applications of this kind, to weigh the entire case, and, if in its opinion the verdict is against the clear weight of the testimony, to grant a new trial. The trial judge listens to the evidence, sees the witnesses, notes their appearance on the witness stand, is familiar with the atmosphere surrounding the case, and therefore has an opportunity to ascertain the merits of the controversy and duly to appreciate the weight and force of every item of evidence, and if, in his judgment, the evidence is insufficient, in point of law or fact, to support the verdict, or the verdict is manifestly unjust and such as reasonable men would not adopt or return, he ought not to hesitate to set it aside and grant a new trial. This question was so thoroughly considered in *Serles* v. *Serles*, 35 Or. 289 (57 Pac. 634), that it is sufficient merely to refer to that case.

4. The granting of the new trial was an interlocutory order, involving the merits, and is reviewable on this appeal.

5. An application for that purpose, however, is addressed to the sound discretion of the trial court, and its ruling will not be disturbed by an appellate tribunal, when there appears to have been a substantial conflict in the testimony upon the essential facts: 14 Enc. Pl. & Pr. 962; *McCrum* v. *Corby,* 15 Kan. 112. In the very nature of things, the judge who presides at the trial has a better opportunity to form a just estimate of the credibility of witnesses, and the weight to be given their testimony, than an appellate court, which sees only so much of the case as can be reduced to writing. Great reliance must therefore be placed upon his judgment, and, when he approves a verdict and decides that there was sufficient evidence to support it, his decision will rarely be disturbed. Indeed, the records of this court show that such decision almost invariably ends the controversy; and when the trial judge fails to approve the findings of the jury, and orders a new trial for insufficiency of the evidence, this court must, for the same reason, generally, accept that as the proper and logical conclusion.

6. In this case no part of the evidence as given on the trial is embodied in the bill of exceptions. It contains simply a statement of the rendition of the verdict, a copy of the motion for a new trial, a recital that such motion was allowed, and the opinion of the trial judge, without any evidence whatever. It is true there is a statement in the bill that certain documentary evidence designated as exhibits and all the oral testimony as reported and transcribed by the official stenographer are annexed to and made a part of the bill of exceptions, and for the purpose of identification are "put in a tin box and locked in, and key and box and papers delivered to the clerk of the court, with instructions to transmit the same to clerk of supreme court, and all said exhibits included in said box are hereby annexed to said bill of exceptions and made a part thereof." In fact, however, none of such evidence or exhibits are in any way embodied in, physically attached to, or made a part of, the bill of exceptions, or certified

or identified by the trial judge. They are, strictly speaking, no part of the record: *State* v. *Clements,* 15 Or. 237 (14 Pac. 410) ; *Nosler* v. *Coos Bay Nav. Co.* 40 Or. 305 (63 Pac. 1050).

7. But, waiving this point (although this must not be regarded as a precedent), and looking into what counsel claims to be the testimony, we find the evidence conflicting, but in our opinion preponderating in favor of the defendants. The complaint charges, in substance, that it was negligence for the defendants to attempt to move the Almond Branch through the harbor of Portland at the then stage of the water with only one towboat, and that they were negligent in the management of the vessel after the voyage was commenced, and such negligence was the proximate cause of the injury to plaintiff's bridge. If the voyage was negligent, or such as reasonably prudent men, familiar with river navigation, would not have undertaken, and such negligence was the proximate cause of the injury complained of, then all persons controlling or participating in such voyage would be jointly and severally liable, and it would be no defense for one joint tort-feasor that another person was also liable. If, however, the voyage was not negligent, and the accident to the bridge was caused by negligence in the navigation after the voyage was begun, the party or parties so negligent would alone be liable.

8. There was no evidence, so far as we can ascertain, connecting the lumber company with any of the negligent acts charged. It was the charterer or hirer of the Almond Branch, but did not have command, possession or control of the vessel, so far as its management or navigation were concerned, except to direct where it should receive its cargo. The vessel was under the sole charge and command of the master employed by and who represented the owners, and not the charterers. By the terms of the charter party, the owners agreed to let, and the lumber company to hire, the vessel "with a full complement of officers, seamen, engineers and firemen, and in every way fitted for the service to trade" between such ports as the charterer might direct for a period of from three to nine calendar months at the char-

terer's option; the cargo to be taken or discharged at any dock or wharf the charterer might direct where the vessel could lie safely afloat. The owners agreed to provide and pay for all provisions, the wages of the captain, officers and crew, insurance, engine room stores, and to maintain the vessel in a thoroughly effective state in hull and machinery for service, and that the captain employed by the owner should be under the orders and direction of the charterers as regarded agency and other arrangements, and should prosecute his voyages with the utmost dispatch. The charterer was to provide and pay for fuel, port charges, expenses of loading, and the like, and 10 shillings per gross ton register per calendar month. Such a charter party is a mere contract of affreightment, and not a demise of the vessel, and the charterer is not liable for the acts and conduct of the officers and crew in the management of the vessel: *Grimberg* v. *Columbia Packers' Assoc.* 47 Or. 257 (83 Pac. 194: 114 Am. St. Rep. 927).

9. The witnesses differ as to whether it was want of ordinary prudence to attempt to take a vessel of the size of the Almond Branch through the draw of the Morrison Street Bridge, at the then stage of the water, with only one towboat. Capt. Spencer and one or two other witnesses for the plaintiff say that it was not safe to do so. Capts. Pease, Bailey, Snow and Conway say that there is a difference of opinion among river-men on the subject, some pilots using one towboat, and some two. Capts. Emken, Patterson and Pope testify that in their opinion one towboat was sufficient, and that an ordinarily prudent pilot would attempt the voyage with but one boat. It thus appears that there was a conflict in the testimony upon the question as to whether the voyage itself was negligent, but the evidence was not so clearly in plaintiff's favor that the conclusion of the trial court on the motion for a new trial will be disturbed; and, if the voyage was not negligent, there was no evidence of any negligence of the towing company or of Capt. Mitchell contributing to the injury complained of.

10. The Vulcan, of which Mitchell was captain, and which

belonged to the towing company, was not furnishing the power for or towing the Almond Branch at the time of the accident, but was lashed to her for steering purposes only. The Almond Branch was proceeding under her own steam, but as she was a propellor, and could not steer herself while backing, the Vulcan was lashed to her by direction of those in charge for that purpose. The Vulcan and her captain were under orders from the bridge of the Almond Branch, and there is no evidence that such orders were not strictly obeyed, or that any act of omission or commission of the Vulcan or her captain in any way contributed to the injury to plaintiff's bridge, unless it was in participating in a negligent voyage. The defendant Emken was the pilot of the Almond Branch, and the testimony of himself and the witness Lewis, who was on the vessel, was to the effect that, while she was passing through the draw, her master, who was in command, without direction from the pilot, and without his knowledge, gave an order to the engine room to go full speed ahead, without communicating that fact to the Vulcan, which was backing, the result of which was to cause the Almond Branch to swing to port and foul the bridge. This testimony is undisputed, and it is but a fair inference from it that the proximate cause of the injury was the act of the master referred to, and not the negligence of any of the defendants to the present action. Upon such a record the court was clearly justified in setting aside the verdict and granting a new trial.

Counsel argues, however, that evidence of the negligence of the master was not competent under the pleadings, and cites authorities which seem to hold that in collision cases the defendant cannot rely on a general denial, but must set up by way of answer the circumstances relating to the collision: *The Why Not,* L. R. 2 Adm. & Ecc. 265; *The Washington Irving,* Abb. Adm. 336 (Fed. Cas. No. 17,243). But the cases referred to were in admiralty, and, whatever the proper rule may be in such proceedings, it can have no application here. This is an ordinary action for negligence, and in such case it is competent, under a general denial, for the defendant to show that the acts

upon which it is based were done by other persons for whose negligence it was not liable: 14 Enc. Pl. & Pr. 344; Bradner, Evidence (2 ed.), 46. Thus, in an action to recover for an injury to plaintiff's house, caused by negligent blasting, the defendant was permitted to show under general denial that the blasting was done by an independent contractor over whom he had no control: *Roemer* v. *Striker,* 142 N. Y. 134 (36 N. E. 808).

11. The rule is that any fact which in effect admits the cause of action set out in the complaint, but attempts to avoid its force and effect, must be affirmatively pleaded; but evidence which merely controverts facts necessary to be proved by the plaintiff to authorize a recovery must be shown under the denials: *Buchtel* v. *Evans,* 21 Or. 309 (26 Pac. 67); *Duff* v. *Willamette Steel Works,* 45 Or. 479 (78 Pac. 363: 17 Am. Neg. Rep. 121). The averment that the injury to plaintiff's bridge was due to the negligence of defendants was put in issue by the answer, and they were therefore entitled to show affirmatively under their denials that they exercised due care, and that the injury arose from some other cause, such as the act of some person for whom they were not responsible: *Hunter* v. *Grande Ronde Lum. Co.* 39 Or. 448 (65 Pac. 598). Nor were they deprived of this right because the answers as filed set up other reasons for the accident. The complaint and answers made an issue upon the question of negligence. The burden of proof was upon the plaintiff to show the negligence charged, either directly or by inference, and any testimony which would tend to controvert the plaintiff's case was competent under the denials. Nor was the question concluded by the ruling of the trial court sustaining the demurrer to a former answer, which set up that the master of the Almond Branch was responsible for the accident. That fact was alleged among other matters and the demurrer may have been, and probably was, sustained on the ground that the matter pleaded, so far as material, would be competent evidence under a general denial. We are therefore of the opinion that the ruling of the court below granting a new trial should not be disturbed on this appeal.

12. After the verdict had been set aside and the new trial granted, defendants moved for a change of venue, supporting their motion by affidavit to the effect that the inhabitants of Multnomah County, from the taxpayers of which a jury to try the case must be drawn, were so prejudiced against the defendants by reason of their financial interests as taxpayers that a fair and impartial trial could not be had in the county, and because any taxpayer would, when called as a juror, be subject to challenge for implied bias by either party to the litigation. The motion was allowed, and the place of trial changed to Clackamas County, and this ruling is assigned as error. The right to change the place of trial of an action rests in the sound discretion of the trial court, and its ruling in granting or refusing an application for that purpose will not be disturbed on appeal, unless there is a clear abuse of discretion (*State* v. *Humphreys*, 43 Or. 44, 55: 70 Pac. 824; *State* v. *Armstrong*, 43 Or. 207: 73 Pac. 1022), and there was no such abuse in this case.

13. Under the law a taxpayer of Multnomah County could have been successfully challenged for implied bias by either of the litigants (*Ford* v. *Umatilla County*, 15 Or. 313: 16 Pac. 33), and thus it would have been difficult, if not impossible, to secure a jury in that county.

14. The plaintiff contends, however, that the defendants were estopped from insisting on a change of the place of trial on account of the financial interest of the jurors because of an agreement made before the first trial to waive the right of challenge on that account. It appears that, before the first trial, the presiding judge notified counsel that, unless they could agree upon some satisfactory plan to limit the challenges to jurors for implied bias because they were taxpayers, he would, on his own motion, change the place of trial. In order to avoid such change, counsel orally stipulated in open court that they would select the jury from the then jury list of the county, and would waive the right to challenge any of the jurors so selected for implied bias. This agreement, however, evidently related to

the trial then about to take place, and was not intended to apply to future trials.

There are 36 assignments of error, based upon rulings made during the progress of the trial in Clackamas County. Many of these present the same question in different forms, and others have already been disposed of. We shall not attempt to notice the several assignments in detail, but will briefly consider the general questions involved.

15. Mr. Wheelwright's testimony as to how Mr. Lewis happened to be on board the Almond Branch at the time of the accident was competent. The plaintiff charged and attempted to show that the Pacific Export Lumber Co., of which Wheelwright was the manager, was a party to and participated in the alleged negligent navigation. Lewis was an employe of the lumber company and superintended the outside work of loading vessels. His being on the Almond Branch, if unexplained, might raise an inference that the lumber company was in some way participating in or directing the navigation of the vessel, and Wheelwright's testimony that he was not there as a representative of the company, but for his own convenience, would tend to repel such inference.

16. The testimony of Capt. Emken as to what the master of the Almond Branch said at the time or immediately after giving the order to the engineer to go full speed ahead was competent as part of the *res gestae,* characterizing and explaining his act.

17. The testimony of Lewis that from his experience in the harbor of Portland, and knowledge of the river currents, and what he saw from the bridge of the Almond Branch, the vessels were proceeding safely through the draw at the time the alleged order of the master was given to go full speed ahead, and without such order the vessels would not have collided with the bridge, was, we think, competent. Lewis had been "on the water all his life," had passed through the draw 20 or 30 times on board vessels at all stages of the water, had watched their navigation, and was familiar with the facts in the present case, and therefore competent to testify, from what he saw from the bridge

of the Almond Branch and from his general knowledge of the river and navigation, whether the vessels were passing safely through the draw at the time alluded to. His testimony was not wholly that of an expert nor opinion evidence. It was based in part upon what he saw at the time, much of which it would be difficult correctly to state or detail so as to be fully understood by the jury: *First Nat. Bank* v. *Fire Association,* 33 Or. 172 (53 Pac. 8).

18. His qualification to express an opinion on the subject was a question of fact for the trial judge, and his finding will not be disturbed except in case of an abuse of discretion: *Oregon Pottery Co.* v. *Kern,* 30 Or. 328 (47 Pac. 917) ; *First Nat. Bank* v. *Fire Association,* 33 Or. 172 (53 Pac. 8) ; *Farmers' Nat. Bank* v. *Woodell,* 38 Or. 294, 300 (61 Pac. 837) ; *Aldrich* v. *Columbia Ry. Co.* 39 Or. 263 (64 Pac. 455).

19. There was no error in sustaining an objection to the question asked Lewis on cross-examination concerning the averments in the amended answer of the defendant lumber company. Lewis was not an officer of the company. The answer was not prepared by him or under his direction. It was not verified by him, nor was he in any way responsible for its contents; and furthermore, he was not interrogated about the matter on his direct examination.

20. The testimony of Wheelwright, the manager of the lumber company, that the officers of the company had nothing to do with the navigation of the Almond Branch, and his orders to the master to take his vessel from a dock south of the Morrison Street Bridge to one north thereof were not given on the day the attempt was made to move the vessel, was clearly competent. The plaintiff charged the lumber company with participation in the negligent navigation of the vessel, and this evidence was competent as tending to disprove such charge.

21. While Wheelwright was on the stand, he was asked on cross-examination, if he verified the first answer of the lumber company, and, his reply being in the affirmative, an offer was made to read to the jury the statement of the cause of the

accident as contained in such answer. The objection was sustained, we think properly, on the ground that the plaintiff had closed its case, and, if the reading of the answer was competent at all, it was evidence in chief and should have been offered at the proper time.

22. There was no error in refusing to admit in evidence, by way of rebuttal, an award made by arbitrators in England of a controversy between the owners of the Almond Branch and the defendant lumber company, and the confirmation of such award by the Court of King's Bench. The parties to the submission are not the parties to this action, nor did the matter of the award cover the subject now in controversy. The question there in dispute was whether the Almond Branch was off hire, within the meaning of the charter party, during the time she was afoul the bridge and aground in the river, and an adjudication of this question could have no bearing upon the present action.

23. At the close of the testimony, the plaintiff moved for a directed verdict, and the overruling of this motion is assigned as error. This motion was based on the contention that defendants had not overcome the *prima facie* case made by plaintiff; but that was a question of fact for the jury, and not the court. There was abundant evidence tending to show that defendants were not responsible for the accident to plaintiff's bridge. The credibility of the witnesses, the effect of contradictory and inconsistent statements, and the weight to be given to their testimony, were not questions which could be disposed of on motion for a directed verdict.

The remaining assignments of error need not be specially noticed. In our opinion they are without merit. All the essential features of the requested and refused instructions were embodied in the general charge, and the case was fairly and fully submitted to the jury. The instructions, as given, cover every essential feature of the case with commendable clearness.

From a careful examination of the entire record, we are satisfied that there was no error, and that the judgment must be affirmed.    AFFIRMED.