Argued January 27, reversed and remanded with directions February 15, 1921.

## MASTERS v. WALKER.

(195 Pac. 381.)

**Trial—Question for Jury Where Reasonable Minds Might Draw Different Conclusions.**

1. Where the testimony is such that reasonable minds might draw different conclusions therefrom, it should be submitted to and passed on by a jury.

**Account Stated—Question as to Account Stated Held for Jury.**

2. In an action by an attorney on an account stated for compensation for services rendered, whether there was an account stated *held* for the jury.

**New Trial—Court Without Power to Set Aside Verdict Based on Evidence.**

3. Under Article VII, Section 3, of the Constitution, as amended (see Laws 1911, p. 7), the trial court was without power to set aside a verdict and grant a new trial on account of insufficient evidence, where there was competent substantial evidence sustaining the verdict.

**Account Stated—Presupposes Absolute Acknowledgment.**

4. An account stated presupposes an absolute acknowledgment or admission of a certain sum due or an adjustment of accounts, the striking of a balance, and an assent express or clearly implied to the correctness thereof; and, if an acknowledgment or admission is qualified, and not absolute, or if there is merely an admission that something is due, the transaction does not create an independent cause of action.

**Account Stated—When Question is for Jury.**

5. Whether an account rendered was so admitted by the debtor as to make the account an account stated is a question of fact for the consideration of a jury, if the acts are not clear or undisputed.

**Account Stated—Minds must Meet.**

6. In stating an account as in making any other agreement, the minds of the parties must meet.

**Appeal and Error—Verdict Based on Substantial Evidence not Disturbed.**

7. The appellate court is powerless to disturb a verdict based on substantial evidence.

From Multnomah: ROBERT G. MORROW, Judge.

Department 2.

Plaintiff brought this action against defendant, alleging that she employed him as her attorney in April, 1914, to assist in the defense of a case then pending against her in the District Court of the United States for the District of Oregon; that he conducted the case to final determination; that on December 15,

---

4. For rule that receipt of statement of account without protest amounts to admission of its correctness, see note in Ann. Cas. 1915A, 694.

1915, plaintiff and defendant had an accounting to-
gether as to the amount due plaintiff for such ser-
vices, and it was understood and agreed between them
that defendant should pay plaintiff for his services
the sum of $4,000; and that defendant has paid
thereon $183.33. The defendant presents three de-
fenses. The first consists of a denial that the account
was stated. This raises the only material issue on
this appeal. The cause was tried to the court and
a jury, a verdict rendered in favor of defendant, and
a judgment entered thereon. Plaintiff thereupon filed
a motion for a new trial upon the grounds: (1) In-
sufficiency of the evidence to justify the verdict; (2)
that the verdict is against law; (3) that the verdict
is contrary to the instructions of the court; (4) error
in law occurring at the trial and excepted to by plain-
tiff. The trial court granted the motion and set aside
the judgment without indicating upon which ground
such order was based. Defendant appeals.

The plaintiff, W. Y. Masters, testified in his own
behalf in regard to his employment by Mr. W. A. Bell,
as attorney for defendant, and in regard to the ren-
dition of his services in conducting the defense, and
then as bearing upon the question of the stated account
on December 15, 1915, at plaintiff's office, when there
were present plaintiff, W. Y. Masters, Mr. W. A. Bell,
Miss Nannie E. Taylor, and defendant, Mrs. Walker,
in substance as follows:

"Q. Now, state to the jury what was the subject of
discussion at that time between you people at the
office.

"A. The entire discussion was what our fees should
be in that case. I took up the question of fees, what
she was to pay me in the case. Mr. Bell was there.
We discussed my fee there, and Mr. Bell had already
agreed to wait for his fee.

"Q. He said so?

"A. Yes; in this conversation she was talking to me about my fee; and what it should be. That was the principal conversation. She had already had some conversation with Mr. Bell about his fee, as I understood from what she said, and he had agreed with her to wait and take her note. We first discussed the amount of my fee. I asked her in the first place $5,000 for my services in the case, and she thought that was too much, and we discussed the matter backwards and forwards, *pro* and *con,* for quite a long time. Finally, I said to her I would take $4,000 and close the matter up, and that seemed to be satisfactory, and then she turned the conversation to when it had to be paid. * * After some little talk, I said: 'Mrs. Maling, if you will give me $3,500 cash to-day, right away, I will give you a receipt in full for your bill of $4,000.' She said Congressman Williamson owed her a mortgage of $3,500, which was past due, and she said: 'If I can collect that money from him when I get home I will send you $3,500 in full settlement of the whole thing'; and she went out of my office with that understanding, if she could get the $3,500 for case at that time. She left the office at that time."

In regard to the settlement the other witnesses testified, in substance, as follows: Mr. W. A. Bell, the attorney associated with the plaintiff in the case for which fees were claimed, testified on behalf of plaintiff:

"Q. And finally it was practically adjusted. Now, after that, were you present at Mr. Masters' office on the occasion of Mrs. Maling and Mr. Masters and Miss Taylor and yourself were present?

"A. Yes; I was present.

"Q. Did you remember the date of it?

"A. That was December 18, 1915.

"Q. What was the subject of conversation at that meeting?

"A. Well, the main, the only, purpose of the meeting was to settle the question of fees; the only thing we had to settle at that time.

"Q. About how long did this interview continue?

"A. Oh, I presume Mrs. Maling—when I speak of Mrs. Maling, I mean Mrs. Walker; I am used to calling her Mrs. Maling—I presume that Mrs. Maling and Miss Taylor arrived there somewhere about 10 o'clock, and it was about lunch time when we got through.

"Q. What was said, if anything, about whether or not all the fees should be paid at once?

"A. No; Mrs. Maling said she was short on ready money, and I told her as far as mine—I guess I had told her before—as far as my fees were concerned, I could wait. I think I had. Mr. Masters offered to settle for $3,500 cash, or $4,000 otherwise, and Mrs. Maling said she didn't know until she went back to Prineville whether she had enough money, or could get enough that was due, and I told her if she was short, and I had it on hand, I would loan it to her.

"Q. There was a negotiation then, about the fees, that took place at that time. Now what was said about the amount of the fees?

"A. The amount of the fees was $8,000; $4,000 apiece."

Miss Nannie E. Taylor, a witness for defendant, testified:

"Q. Will you state just what they said about their charge, what each one said their charges would be, and what Mrs. Walker said?

"A. What was said in regard to the charges, that was at the previous meeting, if I remember correctly.

"Q. That is the meeting I am talking about. State what happened there.

"A. I went with Mrs. Maling for her to ascertain the fee, and she was told—I believe Mr. Masters said this—that the fee would be $4,000 each, and she expressed surprise and replied, '$2,000 for Mr. Masters

and $2,000 for Mr. Bell?' and Mr. Masters said, 'No; $4,000 for each; $8,000 in all'; and she replied, '$8,000,' and then repeated that twice, and remarked, 'That is my death blow,' and with that Mr. Bell or Mr. Masters said—I think it was he—I may be mistaken in using the name, but I think Mr. Masters said, 'According to the valuation of the estate, we might charge $10,000, but we will be satisfied with $8,000'; and then Mr. Bell remarked that according to the inventory of the estate, if the value was a given figure; I can't tell now what the figure was.

"Q. Do you remember it was $100,000?

"A. Seems to me it was $100,000. * * "

On cross-examination Miss Taylor testified thus:

"Q. I don't know whether you remember or not, but what was said as far as you can remember about Mr. Bell taking a note for the four thousand dollars he claimed; he, Mr. Bell, claimed; what was said about that?

"A. He said he would advance the money to pay Mr. Masters, and would take her note for the whole amount, if she would agree to his terms; and she refused.

"Q. She would not give a note?

"A. No, sir."

Mrs. Walker testified:

"Q. Tell the jury what took place that day in that office.

"A. Well, that day he spoke about his fee, while Mr. Bell was present. Mr. Bell spoke about his fee, and Mr. Masters about his fee. Mr. Masters spoke about it first, and he said his fee would be $4,000. And when he said that I was dumbfounded, and I said: 'Well, this is the first nail in my coffin,' or something to that effect. I know it was something desperate. It affected me dreadfully. After that, Mr. Bell spoke about his fee, and I said I didn't have it, but I said there was a party in Prineville owed me money, and that I might perhaps get it from him, and when I went home, I would see what

I could do; but I was addressing Mr. Bell. I was not addressing Mr. Masters at that time.

"Q. Will you tell the jury whether you ever told Mr. Masters you were satisfied with that charge, or that you would pay that charge?

"A. I never spoke of being satisfied about anything.

"Q. Did you ever promise to pay him that amount?

"The Witness: You will remember, gentlemen, it is a good many months since this occurrence, and my memory may not hold out very good in regard to the little minor things.

"Mr. Nelson: Q. Did you say anything at all to him with regard to being satisfied with his charge, or offer to pay it?

"A. No, sir."

After the discussion in Mr. Masters' office the defendant returned to Prineville, and the plaintiff wrote her several letters, urging payment of his fee. In the first, written February 15, 1916, he referred to the matter that when she was in Portland they had talked over and agreed on his bill, and that he had suggested he would discount his bill $500 and take $3,500; and made a further proposition that if defendant would pay $1,000 cash at that time and $250 a month until the bill was paid he would still discount the bill. Mrs. Walker answered this letter, stating, "Yours of the 15th inst. received and contents noted," and made no answer to the other letters.

REVERSED AND REMANDED WITH DIRECTIONS.

For appellant there was a brief over the names of *Messrs. Dey, Hampson & Nelson,* with an oral argument by *Mr. Roscoe C. Nelson.*

For respondent there was a brief and an oral argument by *Mr. John B. Cleland.*

BEAN, J.—The question presented upon this appeal for which the plaintiff contends, and upon which the case turns, is that there was no substantial evidence to support the verdict. Defendant maintains there was competent evidence supporting the verdict, and that the trial court erred in granting a new trial.

Epitomizing the testimony, it will be seen that according to the plaintiff's version, on December 15, 1915, at the time the parties discussed the matter of compensation, and Mr. Masters informed Mrs. Walker of the amount of his fee, $4,000, Mrs. Walker "seemed satisfied," and indicated that on her return to Prineville she would see about taking advantage of his offer to take $3,500 cash. This is as strong a statement as can be found in the testimony on the part of plaintiff. On the other hand, the testimony of the defendant tended to show that when he informed her that the fee would be $4,000 for himself and $4,000 for Mr. Bell, she exclaimed three times, "Eight thousand dollars," and remarked "That is my death blow," that she never spoke of being satisfied, and that she did not assent to the same or promise to pay it. She asserts that when she stated that upon her return to Prineville she would think the matter over and see what she could do, that there was a man who owed her money, she addressed her remarks to Mr. Bell and not to Mr. Masters. A reading of her testimony cannot fail to convince a disinterested person that Mrs. Walker intended the jury to understand from her testimony that she never assented to the amount of plaintiff's charge. The testimony of Miss Taylor tended to show that Mrs. Walker did not agree to the proposition made. Miss Taylor testified that Mr. Bell, who was interested in and took part in the attempted settlement,

said he would advance the money to pay Mr. Masters and would take her note for the amount "if she would agree to his terms." This language of Mr. Bell, which the jury had the right to believe from Miss Taylor's testimony, indicated that at that stage of the discussion there had been no settlement. She testified in effect that there was not a word said about Mrs. Walker consenting or agreeing; that she did not consent to plaintiff's proposition either orally or in writing.

1, 2. It is evident from the testimony that reasonable minds might draw different conclusions therefrom. In such a case the testimony should be submitted to and be passed upon by a jury: *Domurat* v. *Oregon-Washington Ry. etc. Co.*, 66 Or. 135 (134 Pac. 313). A careful examination of the testimony in the present case leads to the conclusion that there was testimony on the part of the defendant contradicting the claim of plaintiff that an account was stated between him and Mrs. Walker, on December 15, 1915. Such testimony was competent and substantial to refute the testimony upon the part of plaintiff. Mrs. Walker was a woman of about 73 years of age, and her testimony is not as direct and positive as Miss Taylor's, yet this is a matter for the consideration of a jury. It was for the jury to construe her oral testimony and that of her witness. The case was a proper one for the determination of a jury.

3. There being competent substantial evidence sustaining the defendant's theory of the case, and refuting plaintiff's claim, as made by his complaint and testimony, according to the mandate of the Constitution that "no fact tried by a jury shall be otherwise re-examined in any court of this state,

unless the court can affirmatively say there is no evidence to support the verdict,'' the trial court was without power or authority to set the verdict aside and grant a new trial on account of insufficient evidence: Section 3, Article VII, Constitution of Oregon as amended (see Laws 1911, p. 7).

4–6. An account stated presupposes an absolute acknowledgment or admission of a certain sum due, or an adjustment of accounts between the parties, the striking of a balance, and an assent express or clearly implied to the correctness thereof. If the acknowledgment or admission is qualified, and not absolute, or if there is but an admission that something is due, the transaction does not create an independent cause of action. Whether the account rendered was admitted by the debtor so as to make the account an account stated is a question of fact for the consideration of a jury, if the facts are not clear or undisputed: 1 R. C. L., p. 211, § 9. In stating an account, as in making any other agreement, the minds of the parties must meet: 1 C. J., p. 684, § 262; *Howell* v. *Johnson,* 38 Or. 571, 575 (64 Pac. 659); *Carlon* v. *First Nat. Bank,* 80 Or. 539, 548 (157 Pac. 809).

7. The testimony on the part of defendant clearly tended to show that on December 15, 1915, there was no meeting of the minds of plaintiff and defendant upon the question of amount of plaintiff's attorney's fees. Mrs. Walker did not dispute that she was indebted to plaintiff. She did not refuse at that time to pay him, but her testimony warranted the jury in believing that she did not assent to the amount of his claim. It might be said that the testimony upon the part of plaintiff on this point was not strong. The testimony upon the part of defendant may not have been much stronger, yet the question

of the weight of the evidence was for the jury.  The only force that the letters written by plaintiff to defendant could have would be to corroborate the statement of plaintiff that there had been an account stated on December 15, 1915.  The complaint is based on an agreement made on that date.  It was possible for the jury to draw different conclusions from the testimony in the case.  The jury found in favor of defendant to the effect that there was no account stated between plaintiff and defendant, on December 15, 1915, as claimed by plaintiff.  Judgment on the verdict having been rendered, the trial court and this court are powerless to grant the plaintiff relief.

It is not claimed on the part of plaintiff that any errors occurred upon the trial, and we find none.  The trial court erred in setting aside the verdict.

The judgment of the lower court is therefore reversed, and the cause remanded, with direction to enter a judgment in the case in accordance with the verdict of the jury.

REVERSED AND REMANDED WITH DIRECTIONS.

BURNETT, C. J., and JOHNS and BROWN, JJ., concur.