Argued September 25, reversed October 10, 1922.

## MITCHELL *v.* SOUTHERN PACIFIC COMPANY.

(209 Pac. 718.)

**Pleading—Answer Denying Averment of Value of Produce Held to Admit Value to be Any Sum Less Than Averred.**

1. In an action for loss on onions shipped over defendant's railway, where defendant denied plaintiff's averment as to the reasonable value at the time of delivery to defendant "that the reasonable value was $558.85 or any part thereof in excess of $——," it admitted the value to be any sum less than $558.85.

**Pleading—Notwithstanding Admission of Value at Time of Shipment of Onions, Defendant Could Prove Unfit Condition at Time of Receiving for Shipment.**

2. In an action for loss to onions shipped over defendant's railroad, notwithstanding defendant's answer to an averment of reasonable value admitting value to be any sum less than amount averred, defendant could prove an unfit condition when received for transportation, and that by plaintiff's negligence in removing them from the car at destination the value was diminished.

**Appeal and Error—Testimony Inadmissible Over Proper Objection, Properly in a Case, not Disregarded on Appeal.**

3. When testimony that might be inadmissible over valid objection is properly in a case, it cannot be disregarded on appeal.

**New Trial—Constitution Prohibits Re-examination of Fact by Court Where Substantial Evidence Supports Jury's Verdict.**

4. In view of Constitution, Article VII, Section 3-c, providing no fact tried by a jury shall be re-examined in any court unless the court can affirmatively say there is no evidence to support the verdict, in an action for damage to a shipment of onions, where there was competent evidence to support the jury's verdict, it cannot be disturbed on motion for new trial.

From Multnomah: J. P. KAVANAUGH, Judge.

Department 2.

This is an action for the recovery of $545.55, damages, for loss upon a carload of onions shipped by the plaintiff over defendant's railway from Hillsboro, Oregon, to Stockton, California. In the court below the plaintiff recovered judgment in the sum of $1. From an order based upon motion filed by the plaintiff setting aside the judgment and granting a new

trial "on the ground that the said verdict is contrary to the law, and on the ground that the said verdict awarding plaintiff $1 damages is inadequate and an impossible verdict under the pleadings and evidence and was rendered contrary to the instructions of the court," the defendant appeals.

The complaint avers, among other things, that plaintiff delivered to the defendant, in good and sound condition, onions of the reasonable value of $558.85; that they "were of a perishable nature and to transport them undamaged at said time of the year they required careful ventilation during transit, and prompt delivery, as the defendant's officers and agents well knew"; that the car "was provided with hatches and ventilators, so that it was capable of being ventilated while in transit"; that owing to the defendant's carelessly and negligently failing to keep the hatches and ventilators of the car open, or to keep the ice plug out, the onions became heated, sweat and sprouted, and were rendered practically worthless, to plaintiff's damage in the sum of $545.55.

The defendant denied "that the reasonable value of said * * onions was $558.85, or any part thereof, in excess of $——."

The defendant, for an affirmative and separate answer and defense, averred that,—

" * * Any loss or damage suffered by the plaintiff on account thereof was caused by the inherent vice and defect of said onions and their perishable qualities, and by the soft and damaged condition of said onions at the time they were delivered to this defendant for shipment, and by the confinement of said onions in the car of this defendant at Stockton, California, from the twenty-fourth day of February, 1916, until the second day of March, 1916, due to the neglect, failure and refusal of the plaintiff to instruct

defendant as to their disposition and as to the person to whom delivery of the same could be made.''

The court instructed the jury, among other things, that—

"The burden of proof first rests upon the plaintiff to satisfy you by a preponderance of the evidence that these goods were in sound condition when they were received by the carrier at the City of Hillsboro * * . Your first inquiry will be, 'What was the condition of these goods when they were placed in the car of the defendant * * ?' The bill of lading and the contract which the company made with the shipper provided that the company would not be responsible for damages which resulted from unsound goods at the time they were received."

The court further instructed the jury that—

"The contention is made here upon the part of the defendant that these goods were damaged by reason of the long delay in removal from the car after its arrival * * . If the damages were increased after the goods arrived in the city of Stockton, and further, after a reasonable time had elapsed within which to remove them, then for that increase he could not recover anything in this action, if there was any increase in damage. So it will be necessary for you in that respect, if you come to that point, to determine what was the condition of the goods when they arrived and what was their condition at the end of that reasonable time which he was allowed in which to remove them. Again, what was their condition when he did remove them, and if there was any difference in condition, that is, if there was an increased damage between the time he actually received them and the time he ought to have received them, that would be the only thing that could be deducted, if you find in his favor on the other questions, upon that particular point alone. * * You will consider also the situation of Mr. Mitchell when he received notice that the goods were there and found, through whatever sources were available, that the goods were in a damaged condi-

tion.   He was obliged to exercise reasonable diligence and prudence to minimize the loss.   Did he do that, as disclosed by the evidence?   If he did that, then he is acquitted from any charge of having increased the damage there.   If he did not, then such difference between the condition of the goods when they arrived, including the reasonable time that he was given to remove them, and the time they were actually removed, would be chargeable against any loss which he sustained.''

REVERSED.

For appellant there was a brief over the names of *Mr. Ben C. Dey* and *Mr. Paul P. Farrens,* with an oral argument by *Mr. Farrens.*

For respondent there was a brief over the name of *Messrs. Manning & Harvey,* with an oral argument by *Mr. John Manning.*

BROWN, J.—1. Due to the defendant's form of denial of plaintiff's averment as to the reasonable value of his onions at the time of delivery to the carrier, the defendant admits their value to be any sum less than $558.85: *Hewitt* v. *Huffman,* 55 Or. 57 (105 Pac. 98).

2. Notwithstanding such admission as to the value of the onions when received at Hillsboro for shipment, the defendant is not precluded from alleging and proving the damaged condition of the onions and their unfitness for transportation, and that it was owing to their defective state and the plaintiff's negligence in failing to remove them from the car that their value was diminished to about $178.   From the evidence, and under the guidance of the above instructions of the court, the jury so found.

The evidence is conflicting.   The plaintiff testified that the onions ''were No. 1 Oregon dry onions,'' in good condition when loaded, on February 19th.   There

is other testimony to like effect. However, Leon Shinaberger, defendant's witness, and station agent at Hillsboro, testified that he inspected the car of onions "by going to the car personally and opening the door, climbing up on the car and feeling the sacks of onions on the side and in the center of the car. * * They were bad. To my estimation about one third were soft, absolutely soft." He further testified that he made the investigation because of the unusual request "that I certify across the face of the bill of lading that these onions were in good condition when received by the Southern Pacific Railway."

James C. Ennes, a witness for defendant, and a former employee, testified to seeing some soft, sprouted onions that had been thrown from the car at the point of shipment. He testified that one Earl Luther, another employee of the company at Hillsboro, "came in there and he said, 'Them onions is in d—— bad shape.' He said they were rotten." In response to this question put by plaintiff,—

"Q. That is what you want the jury to understand, that the railroad officials knew this was a carload of rotten onions, damp, wet, not in good condition for shipment; is that what you want the jury to understand?" he answered: "That is what Earl Luther came in and said."

3. While the evidence of what Earl Luther said is hearsay, it was not objected to or moved against in any manner. It is a rule of evidence well settled that when testimony that might be inadmissible over valid objection is properly in the case, it cannot be disregarded by the appellate court: 38 Cyc. 1394, 1395; *Mercantile Trust Co.* v. *Sunset Road Oil Co.*, 176 Cal. 461 (168 Pac. 1037); *Pacific Exploitation Co.* v. *Strickland,* 110 Wash. 646 (188 Pac. 766); *Nedder-*

*meyer* v. *Crawford County,* 190 Iowa, 883 (175 N. W. 339). Ennes further testified that in pursuance of his duties he manipulated the ventilators on the car containing the onions by placing them "in what is called the open position." However, the testimony tended to show that when the car was delivered to the plaintiff's agents at Stockton, the ventilators were closed. Likewise, there is some opinion evidence to the effect that the hatches became closed while the car was in transit, thus preventing proper ventilation.

The evidence is uniformly to the effect that when the car of onions reached Stockton, its destination, it should have been promptly unloaded. Notwithstanding this, the plaintiff permitted the car to remain on the track for eight days. The testimony discloses that there is less ventilation in a standing car than in a moving car; hence, the greatest damage occurred to the onions while the car was standing on the track. The evidence further shows that when the onions were removed from the car they were sweating and sprouting.

G. L. Davenport, a witness for plaintiff, after qualifying as an expert respecting the handling of onions, testified on cross-examination:

"Q. Tell me if onions were soft, damp and unsound, and given to the railroad at Hillsboro, moved out of Hillsboro on the 20th and arrived at Stockton in the early morning of the 24th, and were left to stand on the side-track until the third of the following month, what condition would they be in?

"A. They would deteriorate considerably more than they would otherwise, certainly.

"Q. And there would be considerable deterioration between the 24th of the previous month and the third of the next month, wouldn't there?

"A. Sure."

P. E. Platt, another expert witness of plaintiff, testified on cross-examination:

"If onions are shipped in damp condition they would deteriorate more rapidly than if shipped dry. In fact, I would consider it absolutely insufficient to ship onions soft, damp or unsound."

He further testified that from his years of experience in the shipping and handling of onions by railroad, they "should be removed promptly. No doubt when the car is in motion, there is a current of air forced through the car which would not be the case when the car is standing still."

J. W. Barrett, another expert witness on behalf of plaintiff, testified on cross-examination that "if they [onions] were put in the car soft or damaged or unsound, the shipper would take the chances on their arriving in bad condition and they would deteriorate * * rapidly," and that the decomposition of the onions would increase with the length of time they are permitted to stand loaded in the car. He testified that "onions should be unloaded as soon as possible after arrival."

Walter A. Perry qualified as an expert in the matter of shipment of onions, and, upon cross-examination, said:

"They [onions] would deteriorate more rapidly if they are shipped in a soft, damp or unsound condition. * * The ventilation is always better when the car is moving. It is better to unload them promptly."

W. I. Swank, after qualifying as an expert in handling onions, testified, in substance, that if the car of onions "had only been sweating and had been removed and properly handled, they would not have been damaged."

4. This case involves an application of Article VII, Section 3–c, Constitution, reading:

"No fact tried by a jury shall be otherwise re-examined in any court of this state unless the court can affirmatively say there is no evidence to support the verdict."

The above prohibition of the constitutional amendment has frequently been applied by this court. It is unnecessary to resort to interpretation or construction for the purpose of ascertaining its meaning. Its language is clear, plain and exact. Prior to the amendment, this court, in the case of *Serles* v. *Serles,* 35 Or. 289, 297 (57 Pac. 634), in an opinion by Mr. Chief Justice WOLVERTON, said:

"We think the court in the case at bar proceeded upon an erroneous principle of law in limiting its inquiry to ascertaining whether there was any evidence from which the jury might infer the facts which were attempted to be proven. It should have gone further, and weighed the evidence in accordance with the principles hereinbefore enunciated: *Larson* v. *Oregon Ry. & Nav. Co.,* 19 Or. 240, 247 (23 Pac. 974)."

The doctrine taught in *Serles* v. *Serles, supra,* was cited as authority in *Huber* v. *Miller,* 41 Or. 103 (68 Pac. 400), and followed in *Multnomah County* v. *Willamette T. Co.,* 49 Or. 204, 213 (89 Pac. 389), where the court, speaking through Mr. Chief Justice BEAN, said:

"It is not only the right but the duty of the trial court, in passing on applications of this kind, to weigh the entire case, and, if in its opinion the verdict is against the clear weight of the testimony, to grant a new trial."

In the matter under consideration, these decisions are no longer controlling. The people, from whom all our power emanates, have, by the constitutional amendment hereinbefore referred to, commanded that

no fact tried by jury shall be re-examined, when based upon any legal evidence.

In *Powder Valley State Bank* v. *Hudelson,* 74 Or. 191, 194 (144 Pac. 494), Mr. Justice RAMSEY, in speaking for the court, said:

"The finding of the jury cannot be set aside unless we can say affirmatively that there is no evidence to support the verdict: Article VII, Section 3, of the State Constitution. By 'evidence to support the verdict' is meant some legal evidence tending to prove every material fact in issue as to which the party in whose favor the verdict was rendered had the burden of proof. * * If there was any legal evidence to support the verdict, the trial court properly denied the motion for an instructed verdict. In determining this point we have nothing to do with the weight of the evidence. If there was any legal evidence to support the verdict, or to make out the defendants' counterclaim, the question was for the jury, and not for the court."

To similar effect are *Consor* v. *Andrew,* 61 Or. 483 (123 Pac. 46); *Forrest* v. *Portland Ry. L. & P. Co.,* 64 Or. 240 (129 Pac. 1048); *Buchanan* v. *Hicks,* 66 Or. 503 (133 Pac. 780, 134 Pac. 1191); *Saxton* v. *Barber,* 71 Or. 230 (139 Pac. 334); *Martini* v. *Oregon-Washington R. & N. Co.,* 73 Or. 283 (144 Pac. 104); *Sink* v. *Allen,* 79 Or. 78 (154 Pac. 415); *Schneider* v. *Tapfer,* 92 Or. 520 (180 Pac. 107); *Fuller* v. *Oregon-Washington R. & N. Co.,* 93 Or. 160 (181 Pac. 338, 991); *Joyner* v. *Crown Willamette Paper Co.,* 94 Or. 207 (185 Pac. 299); *Pennock* v. *Sharp,* 94 Or. 520 (185 Pac. 911); *Dolph* v. *Speckart,* 94 Or. 550 (179 Pac. 657, 186 Pac. 32); *Malpica* v. *Cannery Supply Co.,* 95 Or. 242 (187 Pac. 596); *Bessler* v. *Powder River Gold Dredg. Co.,* 95 Or. 271 (185 Pac. 753; 187 Pac. 621); *Masters* v. *Walker,* 99 Or. 299 (195 Pac. 381).

The trial in the court below was legal and regular, and there was some competent, substantial evidence adduced to support the verdict found by the jury. It follows that the judgment of the court below appealed from is reversed, and the cause is remanded to the court below with instructions to enter in the journal of that court the mandate of this court, and to enter a proper judgment based upon the verdict of the jury therein rendered.

REVERSED AND REMANDED, WITH INSTRUCTIONS.

BEAN and McCOURT, JJ., concur.

BURNETT, C. J:, concurs in the result.