Argued July 8; affirmed September 27, 1949

# VAN LOM, A MINOR, v. SCHNEIDERMAN

210 P. 2d 461

*Hugh L. Biggs,* of Portland, argued the cause for Appellant. With him on the brief were Manley Strayer, George H. Fraser, Hart, Spencer, McCulloch & Rockwood, and James Cole, of Portland.

*Elton Watkins,* of Portland, argued the cause and filed a brief for Respondent.

*E. K. Oppenheimer,* of Portland, amicus curiae, made an oral argument and filed a brief.

*B. A. Green,* of Portland, amicus curiae, made an oral argument. With him on the brief were William M. Dale, Jr., Burl L. Green, Donald S. Richardson, Thomas H. Tongue, III, William M. Davis, Nels Peterson, Edwin D. Hicks and James Landye, of Portland.

Before Lusk, Chief Justice, and Brand, Rossman, Bailey, Hay and Page, Justices.

LUSK, C. J.

The plaintiff sued for assault and battery and false imprisonment. At the trial the cause of action based on false imprisonment was withdrawn by the court from the consideration of the jury and the trial proceeded on the charge of assault and battery alone. For that wrong the plaintiff demanded $5,000.00 compensatory damages and $5,000.00 punitive damages. The jury returned a verdict for the full amount asked. From the consequent judgment the defendant has appealed.

There are no exceptions in the record and the defendant's brief contains no assignments of error. The brief sets forth two propositions of law, to-wit: "The verdict of $10,000 rendered in favor of the respondent and against the appellant in this case is manifestly excessive" and "The Supreme Court of Oregon is empowered under Article VII, Section 3, Oregon Constitution, to reduce an excessive verdict." The defendant moved in the Circuit Court for an order granting a new trial on the ground, among others, that the damages were excessive. The court denied the motion. The failure of counsel for the defendant to assign this ruling as error is accounted for by their concession that since the adoption of Art. VII, § 3, of the Constitution it has been uniformly held that the circuit courts of this

state have been stripped of the power which they had theretofore exercised of setting aside a verdict for excessive damages. See *Hust v. Moore-McCormack Lines, Inc.,* 180 Or. 409, 417, 177 P. (2d) 429. They contend, however, that the constitutional provision in question has conferred on this court the authority to inquire into the amount of the verdict and, if it deems the damages excessive, to reduce them and enter a judgment for a lesser amount fixed by the court—this without regard to whether or not reversible error or any error was committed on the trial.

The question being an open one (Hust v. Moore-McCormack Lines, Inc., supra) and one of far-reaching importance, we requested Eugene K. Oppenheimer, Esquire, and B. A. Green, Esquire, to file briefs as amici curiae and to participate in the oral argument. The court desires at this time to acknowledge its indebtedness to these eminent members of our Bar, and to those whom Mr. Green associated with himself in the preparation of his brief, for their willing response to this call to professional duty and the industry and learning which they have brought to its discharge.

A brief statement of the evidence will suffice. The plaintiff, a young woman employed in a Portland shipyard, sought to gain admission to The Music Hall, a tavern of which the defendant was the proprietor, in order to a see a friend who had promised to be there at the time and pay the plaintiff a small debt. According to the plaintiff's evidence, without any provocation on her part, she was roughly evicted from the Music Hall by the defendant's son, who was an employee; was slapped, pushed and kicked by the defendant and his son, who directed profane language at her; was carried downstairs in a "bear hug" by a police officer em-

ployed by the defendant, and detained until the patrol wagon arrived and carried her off to the police station. Defendant's version of the episode was quite different; but the jury's verdict settles the conflict.

There is no evidence that the plaintiff was seriously injured. She testified that she had a bruise on her leg and one on her wrist as a result of the assault. She lost no time from her work.

The court is of the opinion that the verdict of $10,000.00 is excessive. Some members of the court think that only the award of punitive damages is excessive; others that both the awards of compensatory and punitive damages are excessive. Since a majority are of the opinion that this court has no power to disturb the verdict, it is not deemed necessary to discuss the grounds for these divergent views.

Article VII, § 3, of the Constitution, adopted by the people in 1910, reads as follows:

"In actions at law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of this State, unless the court can affirmatively say there is no evidence to support the verdict. Until otherwise provided by law, upon appeal of any case to the Supreme Court, either party may have attached to the bill of exceptions the whole testimony, the instructions of the court to the jury, and any other matter material to the decision of the appeal. If the Supreme Court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial; or if, in any respect, the judgment appealed from should be changed, and the Supreme Court shall be of opinion that it can de-

termine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect as decrees are now entered in equity cases on appeal to the Supreme Court; provided, that nothing in this section shall be construed to authorize the Supreme Court to find the defendant in a criminal case guilty of an offense for which a greater penalty is provided than that of which the accused was convicted in the lower court.''

*(1) Power of Circuit Court*

■ Notwithstanding the failure of the defendant to assign as error the Circuit Court's denial of their motion for a new trial, we asked counsel to present in argument the question of the trial court's power over the verdict. We did so for the reason that the first sentence of Art. VII, § 3, applies both to the Circuit Court and to this court, and it was thought that consideration of the Circuit Court's power, as affected by the provision, might throw light on the propositions which the defendant seeks to maintain. We have examined the question anew and see no reason to depart from that long line of decisions, beginning with *Buchanan v. Lewis A. Hicks Co.,* 66 Or. 503, 133 P. 780, 134 P. 1191, through *Timmins v. Hale,* 122 Or. 24, 256 P. 770, down to *Hust v. Moore-McCormack Lines, Inc.,* supra, 180 Or. 409, 177 P. 2d 429, which hold that, since the adoption of the constitutional amendment, the circuit courts of this state no longer have the power to set aside a verdict in an action for unliquidated damages such as this on the ground that the verdict is excessive.

The first sentence of Art. VII, § 3, is not a grant of power to the courts but a limitation on their powers. It reiterates in substance the provision of the Constitu-

tion, as originally adopted, that "In all civil cases, the right of trial by jury shall remain inviolate" (Art. I, § 17), and adds a prohibition, "and no fact tried by a jury shall be otherwise re-examined in any court of this State, unless the court can affirmatively say there is no evidence to support the verdict." This last clause forbids re-examination of a fact found by a jury otherwise than by another jury (see dissenting opinion of Mr. Justice Harris in *Hoag v. Washington-Oregon Corp.*, 75 Or. 588, 624, 144 P. 574, 147 P. 756), and is transgressed every time that a court undertakes to revise or correct a jury's finding of fact (unless this be done by the Supreme Court where there is error in the record as in the Hoag case). All that the court may do, so far as the facts are concerned, is to examine the record to determine whether it "can affirmatively say there is no evidence to support the verdict". It has not been disputed, and cannot be, that inquiry into the evidence to determine whether a verdict is excessive and for that reason justifies the granting of a new trial, involves the examination of a question of fact. The decisions of the court construing Art. VII, § 3, are founded on that premise. See also, *Lindsay v. Grande Ronde Lumber Co.*, 48 Or. 430, 438, 439, 87 P. 145, and Oregon Cases there cited; *New York Central & Hudson River R. R. Co. v. Fraloff*, 100 U. S. 24, 25 L. ed. 531, 535; 5 C. J. S., Appeal and Error, 27, § 1454, and cases cited in note 89; 39 Am. Jur., New Trial, 147, § 140.

The argument is made that the circuit courts "have authority to grant a new trial if there is no evidence to support the verdict in its entirety, although there may be some substantial evidence that the plaintiff was damaged to some extent less than the amount of the verdict". This may be done, it is said, where "the verdict is in excess of an amount that would be regarded

by all reasonable men as the maximum recovery justified by the evidence.'' When the conclusion is reached that the verdict is to that extent excessive, the argument proceeds, the court ''can affirmatively say there is no evidence to support the verdict'' and no violence is done to the Constitution. This contention has support in the opinion of Mr. Justice Kelly in *Johnson v. Ladd*, 144 Or. 268, 14 P. (2d) 280, 24 P. (2d) 17.*

We think the argument is unsound. It is in reality only a formula under which the courts would in practice do the very thing which they were accustomed to do before Art. VII, § 3, was adopted. In trying to give expression to the principles which should guide the trial court in determining whether an award of damages is so excessive as to warrant setting aside the verdict, this court has said that the verdict must be such ''as reasonable men would not return under the circumstances of the case''. *Serles v. Serles*, 35 Or. 289, 295, 57 P. 634; *Multnomah County v. Willamette Towing Co.*, 49 Or. 204, 213, 89 P. 389. Other statements of the rule are the following: ''the damages are palpably or outrageously excessive'', *Arkansas Valley Land & Cattle Co., v.*

---

*While the opinion of Mr. Justice Kelly appears in the Reports as the opinion of the court it is not entirely accurate to speak of it as the prevailing opinion. Mr. Justice Kelly, Mr. Justice Belt, and Mr. Justice Rossman agreed that the verdict was excessive and that the court had the power to reduce it; Mr. Justice Campbell, while concurring with them on the question of the court's power, thought that the verdict was not excessive. Mr. Justice Bailey wrote an opinion concurred in by Mr. Chief Justice Rand and Mr. Justice Bean, holding that the Supreme Court had no power over the question of excessive damages. Since a majority of the court did not express themselves as believing that the verdict was excessive, all that was said in the opinion for the court about the courts' power might well be deemed unnecessary to the decision. It was this which led us to observe in the Hust case (180 Or. 417) that Johnson v. Ladd cannot be said to settle the question whether the Supreme Court, in a case free from error, may reduce a verdict thought to be excessive.

*Mann,* 130 U. S. 69, 32 L. ed. 854, 9 S. Ct. 458; the amount "must appear to be unreasonable or outrageous, or such as to manifest, on the part of the jury, mistake, misapprehension of duty, or misconduct, indicating that they were influenced by passion or prejudice", 39 Am. Jur., New Trial, 150 § 144; it must be "so great as to appear at first blush to be outrageous, so as to strike every one with its enormity and injustice, so large that no twelve men could reasonably have given it", 4 Sedgwick on Damages, 2673, § 1326; it must substantially exceed "any rational appraisal or estimate of the damages", 15 Am. Jur., Damages, 623, § 205.

It is difficult for us to perceive that there is any substantial difference in the standard now suggested, namely, what "all reasonable men" would regard as the maximum recovery justified by the evidence, and these time-honored standards to which the courts have customarily adhered in passing on the question of whether a new trial should be granted for excessive damages. Yet the courts, in exercising that function, never supposed that they were doing otherwise than passing on a question of fact, or that they were holding that there was "no evidence to support the verdict", as a court does when it grants a nonsuit or a directed verdict or enters judgment *non obstante veredicto.* If, therefore, the contention that we are discussing is to prevail, it must be concluded that Art. VII, § 3, has, at least so far as verdicts for excessive damages are concerned, made no change whatever in the law and that the courts are as free to deal with such verdicts as they were before the provision was adopted.

Consideration of the language of the Seventh Amendment of the Constitution of the United States

and the decisions construing it will throw further light on what the framers of Art. VII, § 3, intended to accomplish. The Seventh Amendment provides:

"In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any court of the United States, than according to the rules of the common law."

The guaranty of jury trial in the Oregon Constitution, as originally adopted, is found in the Bill of Rights, Art. I, § 17, and reads as follows:

"In all civil cases, the right of trial by jury shall remain inviolate."

The first sentence of Art. VII, § 3, reads:

"In actions at law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of this State, unless the court can affirmatively say there is no evidence to support the verdict."

It will be observed that the first sentence of Art. VII, § 3, departs somewhat from the language of Art. I, § 17, of the Oregon Constitution and follows closely the language of the federal guaranty up to the last phrase. The Federal Constitution says that "no fact tried by a jury shall be otherwise re-examined in any court of the United States, *than according to the rules of the common law*"; our present Constitution says that "no fact tried by a jury shall be otherwise re-examined in any court of this State, *unless the court can affirmatively say there is no evidence to support the verdict.*" The Supreme Court of the United States holds that, "according to the course of the common law", a trial court may set aside a verdict which it deems excessive

and order a new trial, but that an appellate court has no authority to review the refusal of the trial court to do so. *New York Central & Hudson River R. R. Co. v. Fraloff* (1879), supra. And see *Slocum v. New York Life Ins. Co.*, 228 U. S. 364, 57 L. ed. 879, 33 S. Ct. 523, Ann. Cas. 1914D 1029. The same rule prevailed in this state prior to the adoption of Art. VII, § 3. The federal and Oregon cases are cited in the Hust case, supra, 180 Or. 430, 431. As stated by the Supreme Court in the New York Central case:

" * * * If the jury acted upon a gross mistake of facts, or were governed by some improper influence or bias, the remedy, therefore, rested with the court below, under its general power to set aside the verdict. * * * Whether its action, in that particular was erroneous or not, our power is restricted by the Constitution to the determination of the questions of law arising upon the record. Our authority does not extend to a re-examination of facts which have been tried by the jury under instructions correctly defining the legal rights of parties."

It may be assumed that the framers of Art. VII § 3, were not unacquainted with the construction which the Supreme Court of the United States had theretofore placed upon the Seventh Amendment of the Federal Constitution; and it is evident that, while following faithfully the language of the first part of the Seventh Amendment, they deliberately rejected the common law exception therein. When they substituted in the place of that exception the words, "unless the court can affirmatively say there is no evidence to support the verdict", they in effect declared their purpose to eliminate, as an incident of jury trial in this state, the common law power of a trial court to re-examine the evidence and set aside a verdict because it was excessive or in any other respect opposed to the weight of the evidence.

## (2) Power of Supreme Court

■ We are thus brought to the defendant's proposition that Art. VII, § 3, authorizes this court to reduce an excessive verdict. The first sentence of the section, standing alone, and applying alike, as we have said, to the Supreme Court and the circuit courts, so far from being a grant, is, as we have seen, a denial of the asserted power. The grant is sought to be found in the succeeding sentences, whose provisions apply to the Supreme Court alone. They appear on their face to have been adopted for the purpose of enlarging this court's powers in certain situations so that litigation can be terminated here and the mischief of repeated new trials reduced. *Knight v. Beyers*, 70 Or. 413, 418, 134 P. 787; *Hoag v. Washington-Oregon Corp.*, supra, 75 Or. 611. For the accomplishment of this end either party is authorized to bring to this court the entire record of the trial—the whole testimony, the instructions of the court to the jury, and any other matter material to the appeal. After careful consideration of all the matters thus submitted, the Supreme Court is authorized by the third sentence of the section either to affirm the judgment, notwithstanding any error committed during the trial, or to direct the entry of such judgment as should have been entered in the court below.

In numerous cases this court has said that this power to retry the case can be exercised only when there is error in the record. *Emmons v. Skaggs*, 138 Or. 70, 74, 4 P. (2d) 1115, and other cases cited in the special opinion of Bailey, J., in *Johnson v. Ladd*, supra, 144 Or. 291, 292. See, also, *Hust v. McCormack Lines, Inc.*, supra, 180 Or. 417. The defendant insists, however, that the power does not depend upon the presence of error in the record and that, "since the amendment de-

prived the trial courts of discretion and authority to grant relief from excessive verdicts, it is apparent that the inclusion of the third sentence was intended to transfer the power to control an unreasonable verdict to this court." This contention finds support in the opinion of Mr. Justice Kelly in *Johnson v. Ladd,* supra, 144 Or. 277, where he said, "the view of the writer is that by the terms of the Constitution, error warranting reversal is not made a condition precedent to the exercise of the right by the supreme court to direct the entry of such judgment as should have been entered in the court below."

The suggested construction, in our opinion, is not within the language of the sentence nor relevant to its purpose. The mischief aimed at, as we have already said, was a multiplicity of new trials. But this court had never, prior to the adoption of Art. VII, § 3, in 1910, ordered the retrial of a case in which the record was free from error. The provision is concerned with cases where there is "error committed during the trial", and is a direction to this court as to what it may in its discretion do in such cases only, that is to say, we may affirm the judgment if we think it is right, or change it if we think it is wrong, and can determine what it should have been. The latter power has been exercised to reduce the verdict, as in the Hoag case and *Martin v. Oregon Stages, Inc.,* 129 Or. 435, 277 P. 291 (both personal injury actions), in *Paget v. Cordes,* 129 Or. 224, 277 P. 101 (assault and battery and false imprisonment), and in other cases involving claims for unliquidated damages. It has never been exercised in any case except as an alternative to granting a new trial for error. We have no occasion now to consider whether this court has correctly applied the constitutional provision in the cases just cited. It is sufficient to say that there is

nothing in our prior decisions (with the possible exception of Johnson v. Ladd and one other case commented on below) or in the language of the amendment, which can fairly be said to give countenance to the view that the people, at the same time that they affirmed and emphasized the inviolability of the right of jury trial, intended to confer upon this court the extraordinary power to substitute its judgment as to the facts for a verdict based upon competent evidence, returned by a properly instructed jury. There is enough difficulty, even under the construction adopted in the Hoag case, as the opinions in that case illustrate, in reconciling the injunction in Art. VII, § 3, against the re-examination by a court of a fact tried by a jury, with the power exercised by this court in the Hoag and other like cases, without creating further and insurmountable difficulties by an interpretation which would convert this court into a super jury with authority to revise and correct verdicts in cases free from error.

A number of our decisions are cited as lending aid to the theory that this court may reduce the verdict when it finds that the evidence does not support it "in its entirety". Many of these decisions are of the same type as the Hoag case and do not call for separate discussion. In such cases this court has not undertaken to say that "there is no evidence to support the verdict". Having found reversible error in the record and being of the opinion that we could determine what judgment should have been entered in the court below, we have simply appraised the evidence as a jury would and arrived at our own determination of a proper award of damages. Cases arising under the Jones Act, such as *Wychgel v. States Steamship Co.*, 135 Or. 475, 296 P. 863, and *Fitze v. American-Hawaiian Steamship Co.*, 167 Or. 439, 117 P. 2d 825, may be put out of view

since, as was ruled in the Hust case, Jones Act cases are governed by federal law and not by Art. VII. § 3. Moreover, the Wychgel case, in which this court reduced the verdict, was overruled in Hust.

*Robertson v. Frey,* 72 Or. 599, 144 P. 128, is an instance where this court affirmed the judgment notwithstanding error in the record.

*Lyons v. Browning,* 170 Or. 350, 133 P. (2d) 599; *McDaniels v. Harrington,* 80 Or. 628, 157 P. 1068; and *Weatherspoon v. Stackland,* 127 Or. 450, 271 P. 741, have certain features in common. In *Lyons v. Browning* we sustained the action of the trial court in setting aside the verdict in an action to recover for the killing and injuring of a large number of turkeys. The verdict included an allowance of damages for the killing of six tom turkeys notwithstanding uncontradicted evidence that only four had been killed. On of the grounds of our decision was that the court erred in instructing the jury in effect that they were authorized to find a verdict for the plaintiff in the amount of $1,575.00 (the full amount prayed for) when the evidence would not support such a verdict. In *McDaniels v. Harrington,* where the plaintiff sued to recover, among other items, the reasonable value of work and labor performed and failed to offer evidence of such reasonable value, it was held that the trial court erred in not withdrawing this claim from the jury. Rather than remand the case for a new trial this court determined the amount to which plaintiff was entitled from the evidence before it. In *Weatherspoon v. Stackland,* an action to recover the sales price of apples, the jury failed to give the defendant credit in their verdict for a sum which the pleadings admitted that he had paid. The trial court, with the plaintiff's consent, reduced the judgment accordingly, and it was held

that the defendant, who appealed, had no ground of complaint since he benefited by the ruling. Further, the jury allowed the plaintiff to recover for the number of boxes of apples alleged in the complaint at the price alleged, whereas the plaintiff's evidence showed a lesser number of boxes sold at a lower price. This court made a reduction in the verdict accordingly. Not only was there error on the part of the trial judge in submitting the case as alleged in the pleadings, but, the claim being a liquidated one, the court was able to determine with absolute certainty that there was no evidence to support it "in its entirety", and likewise was able to ascertain the exact amount to which the plaintiff was entitled.

*British Empire Ins. Co. v. Hasenmayer*, 90 Or. 608, 178 P. 180, was an action to collect the balance due on a subscription to corporate stock—a liquidated claim— in which we approved the action of the court below in setting aside a verdict of $1.00 for the plaintiff because it was not and could not be supported by either the evidence or the pleadings.

We think that no discussion is necessary to show that none of these cases tend in any way to support the proposition that either this court or the Circuit Court is authorized to declare that in a case like this the evidence does not support the verdict "in its entirety" simply because the court thinks that the verdict is too large.

Our attention is also called to *Shives v. Chamberlain*, 168 Or. 676, 687, 126 P. (2d) 28, a malpractice case, in which the court said, in answering a complaint that the verdict was excessive:

"As to the contention that the verdict is excessive and the result of passion or prejudice on the part of the jury, while we fully realize that it is a

large verdict, we cannot affirmatively say that there is no evidence to support it in its entirety."

This language does seem by implication to be in accord with the defendant's theory. It may be that here we find the birth of the notion that a verdict for unliquidated damages for a single wrong (there being no separate and clearly distinguishable items of the claim to which separate and distinguishable items of evidence apply, as in *Lyons v. Browning* for example), can be split up by the court, as it were, into separate verdicts, one of them said to be supported by the evidence and the other to have no such support. At all events, the statement is dictum, and its implication is disapproved.

### (3) Passion and Prejudice

Prior to the oral argument we asked counsel to brief the following question:

"Can a valid distinction be made with respect to the application of Article VII, Section 3, between the power to grant a new trial on the ground of damages which are merely excessive and on the ground of excessive damages appearing to have been given under the influence of passion and prejudice?"

The statutory grounds for granting a new trial are set forth in § 5-802, O. C. L. A., and include the following: "(5) Excessive damages, appearing to have been given under the influence of passion or prejudice; (6) Insufficiency of the evidence to justify the verdict or other decision * * *". Before the adoption of Art. VII, § 3, it was held that either of these subdivisions constituted a grant of authority to the trial court to set aside an excessive verdict. *Adcock v. Oregon R. R. Co.,* 45 Or. 173, 181, 182, 77 P. 78. And see Hust case, 180 Or. 436. Since the adoption of the amendment it has been di-

rectly ruled that the power to set aside a verdict upon the ground stated in subd. 5 of § 5-802, O. C. L. A., has been taken away by the amendment. *Timmins v. Hale,* supra, 122 Or. 43. To the same effect are *McCulley v. Homestead Bakery, Inc.,* 141 Or. 460, 465, 18 P. (2d) 226; *Pierce v. Northern Pacific Railway Co.,* 127 Or. 461, 472, 271 P. 976, 62 A. L. R. 644; *Noble v. Sears,* 122 Or. 162, 170, 257 P. 809; *Hanson v. Johnson Contract Co.,* 117 Or. 541, 543, 244 P. 875; *Buchanan v. Lewis A. Hicks Co.,* supra, 66 Or. 512.

On the other hand, the court has on several occasions indulged in dicta which it is claimed cast doubt upon the correctness of these rulings. See *Weatherspoon v. Stackland,* supra, 127 Or. 453; *Malpica v. Cannery Supply Co.,* 95 Or. 242, 248, 187 P. 596; *Sigel v. Portland Ry. L. & P. Co.,* 67 Or. 285, 290, 135 P. 866.

Since the submission of the case the court has reached the conclusion that it cannot say, either from the size of the verdict itself or from any incident of the trial, that the damages were given under the influence of prejudice and passion. We therefore deem it inappropriate to discuss the question above stated and leave for future consideration, in a case where that question shall be directly involved, whether we should adhere to our previous decisions holding that Subd. 5 of § 5-802, O. C. L. A., has been repealed by Art. VII, § 3, of the Constitution.

### (4) Punitive Damages

On the argument it was suggested from the bench that the court might have the power to interfere with a verdict for exemplary damages even though it lacks that power with respect to compensatory damages. The basis of this suggestion seems to be that in awarding exemplary damages a jury acts something like a judge

in passing sentence on the defendant in a criminal case; and, further, that, since the allowance of such damages is committed entirely to the discretion of the jury, an excessive award amounts to such an abuse of discretion as the court has the power to correct.

■ What are called exemplary, vindictive or punitive damages are, as the terms indicate, assessed against the defendant in a tort action whose acts are characterized by malice or other circumstances of aggravation, as an example to deter others from committing a like offense and to punish the defendant. Such damages are allowed over and above those which fully compensate plaintiff for his loss, including injury to his feelings, mental anguish, humiliation and the like. It has been vigorously objected in the past, and in a few jurisdictions in this country it is still maintained, that there can be no such thing as damages for tort beyond full reparation. And it has been said that the doctrine has its origin in a misreading of the English cases in which the judges, in their charge to the jury, or in ruling on motions to set aside verdicts, referred to the damages as "exemplary" —not to indicate that they included or could include anything beyond compensation, but because, being large, they would, at the same time as they compensated the plaintiff, operate as an example to deter others. The question was vigorously debated three-quarters of a century or more ago by Professor Greenleaf (2 Greenleaf on Evidence (14th ed.) § 253, Note 2), Professor Sedgwick (1 Sedgwick on Damages §§ 347-354), and by some of the courts, conspicuously by Foster, J., in his scholarly and very lengthy opinion in *Fay v. Parker,* 53 N. H. 342. Mr. Justice Foster asks: "What kind of a civil remedy for the plaintiff is the punishment of the defendant?" and he answers: "The idea is wrong. It

is a monstrous heresy. It is an unsightly and an unhealthy excrescence, deforming the symmetry of the body of the law." (53 N. H. 382.) Another court has characterized the doctrine as "a sort of hybrid between a display of ethical indignation and the imposition of a criminal fine." *Haines v. Schultz,* 50 N. J. L. 481, 484, 14 Atl. 488. Mr. Justice Stone in *Pizitz Dry Goods Co. v. Yeldell,* 274 U. S. 112, 71 L. ed. 952, 47 S. Ct. 509, 51 A. L. R. 1376, called the distinction between punitive and compensatory damages "a modern refinement".

■ The allowance of exemplary damages in a proper case is approved in Oregon. *Harper v. Interstate Brewery Co.,* 168 Or. 26, 51, 120 P. (2d) 757; *Coates v. Slusher,* 109 Or. 612, 631, 222 P. 311; *Bingham v. Lipman,* 40 Or. 363, 370, 67 P. 98; and in most of the other states of the union. McCormick on Damages § 78.

■ In the trial of a case where exemplary damages are sought the judge determines as a matter of law whether there is evidence of malice, and, if he decides that there is, the assessment of such damages is committed to the discretion of the jury. *Cholia v. Kelty,* 155 Or. 287, 291, 63 P. (2d) 895; *Martin v. Cambas,* 134 Or. 257, 262, 293 P. 601; *Gill v. Selling,* 125 Or. 587, 591, 267 P. 812. The Supreme Court of the United States says: "This has always been left to the discretion of the jury, as the degree of punishment to be thus inflicted must depend on the peculiar circumstances of each case." *Day v. Woodworth,* 13 How. 363, 371, 14 L. ed. 181. And the jury has entire discretion to refrain from giving any punitive damages at all even though all the elements of malicious and damaging misconduct may have been established. McCormick on Damages 296, § 84, 4 Sedgwick on Damages 2660, § 1318.

The case which, as Professor Sedgwick says (Vol. 1, 689, § 350), is generally cited as establishing the rule of exemplary damages in its present form, is *Huckle v. Money,* 2 Wils. 205, (1763). Lord Chief Justice Pratt, afterwards Lord Camden, in refusing to set aside the verdict as excessive, said ''that it is very dangerous for the judges to intermeddle in damages for *torts;* it must be a glaring case indeed of outrageous damages in a *tort,* and which all mankind at first blush must think so, to induce a court to grant a new trial for excessive damages.'' He thus explained the nature of the court's duty when it undertook to pass upon a motion for a new trial:

''In all motions for new trials, it is as absolutely necessary for the court to enter into the nature of the cause, the evidence, facts, and circumstances of the case, as for a jury; the law has not laid down what shall be the measure of damages in actions of *tort*; the measure is vague and uncertain, depending upon a vast variety of causes, facts, and circumstances; *torts* or injuries which may be done by one man to another are infinite; in cases of criminal conversation, battery, imprisonment, slander, malicious prosecutions, etc. the state, degree, quality, trade, or profession of the party injured, as well as of the person who did the injury, must be, and generally are, considered by a jury in giving damages. The few cases to be found in the books of new trials for *torts,* shews that courts of justice have most commonly set their faces against them; and the courts interfering in these cases would be laying aside juries. Before the time of granting new trials, there is no instance that the judges ever intermeddled with the damages.''

In our own time it would appear that the courts are even more reluctant to set aside verdicts for exemplary than for compensatory damages. It is not done except

"in cases of such abuse as indicates the influence of passion or prejudice." McCormick on Damages, 296, § 85. The same author at p. 278, § 77, says that "the criterion to be applied by the judge in setting aside or reducing the amount is concededly a vague and subjective one." In 4 Sedgwick 2670, § 1325, the author says: "In cases where exemplary damages are allowable, verdicts are rarely set aside. The obvious reason for this custom is that it is not easy to decide that such a verdict is so large as to be against evidence." See 1 Sedgwick 755, § 388. Nevertheless, "The power of the court to set aside a verdict for exemplary damages is the same power, and is exercised upon the same principle, as in any case of excessive verdict." 1 Sedgwick 756, § 388.

■ In our judgment no valid distinction, so far as the present question is concerned, can be drawn between compensatory and exemplary damages. It is impossible for the jury to arrive at the amount to be assessed against the defendant by way of punishment without considering and deciding questions of fact. It must determine first whether there was malice, and, if so, the degree of that malice, both of them questions of fact. It may give consideration to all those elements enumerated in *Huckle v. Money,* supra, and in doing so it necessarily determines what are the facts. See 4 Sedgwick 2659, § 1318. In fixing the amount of damages the jury, of course, may abuse the discretion committed to it. But in actions for tort, in general, one of the incidents is "that a very large discretion is given to the jury as to damages" (Pollock, The Law of Torts (13th ed.) 196), so that, if a verdict for exemplary damages may be set aside for abuse of the jury's discretion, then the same power would exist as to all those classes of

actions in which, as Lord Camden said, "the law has not laid down what shall be the measure of damages"; with the result that by the device of using some such language as "correcting an abuse of discretion" the prohibition in Art. VII, § 3, against re-examination by a court of a fact tried by a jury would be effectually nullified.

It is quite true that the infliction of punitive damages in a civil action bears a resemblance to a criminal penalty, so much so that one of the reasons given against the doctrine by its opponents is that it would sanction double punishment and violate, at least in spirit, constitutional provisions against double jeopardy. *Fay v. Parker,* supra. And see "The Indiana Doctrine of Exemplary Damages and Double Jeopardy", 20 Ind. L. J. 123. But, while considerations of this kind serve perhaps to emphasize to some extent the anomalous character of exemplary damages, they are irrelevant to the question before us. They do not alter the essential nature of the jury's task. Under a system such as ours, where the court responds to the law and the jury to the facts, it would be difficult indeed to say that a question which for centuries has been submitted to the decision of a jury is other than a question of fact. And the reluctance of the courts, having power to do so, to interfere with the jury's decision, gives added weight to this conclusion.

\* \* \*

In ancient times, as is recounted in 1 Holdsworth's History of English Law (3d ed.) 337-347, when a jury brought in what seemed to be a false verdict the court examined by means of an attaint jury whether it was correct. If the original jury was convicted by the attaint jury they were imprisoned for a year, forfeited

their goods, became infamous, their wives and children were turned out, and their lands laid waste. See, also, *Campbell v. Sutliff*, 193 .Wis. 370, 376, 214 N. W. 374, 53 A. L. R. 771; dissenting opinion of Dean, J., in *Smith v. Times Publishing Co.*, 178 Pa. 481, 36 Atl. 296. The barbarity of this practice finally led to its abandonment. But "It was obvious", says Holdsworth (p. 346) "that some regular method of controlling the verdicts of juries was essential to the proper working of the jury system. This regular method of control was found in the growth of the practice of granting new trials if the verdict was clearly contrary to the weight of evidence." And, again, he says in speaking of the value of the jury system as it developed in England, "the jury would never have won this popularity, it would never have attained these results, if it had not been controlled by the action of the courts, the legislature and the Council." (p. 321)

The guaranty of the right to jury trial in suits at common law; incorporated in the Bill of Rights as one of the first ten amendments of the Constitution of the United States, was interpreted by the Supreme Court of the United States to refer to jury trial as it had been theretofore known in England; and so it is that the federal judges, like the English judges, have always exercised the prerogative of granting a new trial when the verdict was clearly against the weight of the evidence, whether it be because excessive damages were awarded or for any other reason. The state courts were conceded similar powers. 46 C. J., New Trial, §§ 136-141; 39 Am. Jur., New Trial, § 129. In this state these powers were written into the statute, § 5-802, O. C. L. A., Subds. 5 and 6; and up to 1910, when the people adopted Art. VII, § 3, of our Constitution, there was

no state in the union, so far as we are advised, where this method of control of the jury did not prevail.* Oregon today occupies in this respect a lonely eminence. Whether it be a "bad eminence" it is not for the courts to say. If the removal from the judges of this power to correct a miscarriage of justice by ordering a new trial constitutes a blow to the jury system, there is nothing a court can do about it. "It must never be forgotten", as Chief Justice John Marshall said in *McCulloch v. Maryland,* 4 Wheat. 316, 406-407, 4 L. ed. 579, 602, "that it is a constitution we are expounding." Whatever our individual opinions may be about the policy involved in Art. VII, § 3, we have no right or authority to subvert its obvious purpose or to refuse to apply its provisions to the full extent of their evident meaning. The people may be misled; they may, through ill-considered legislation, bring on themselves evils worse than those they hope to cure; but it is not the business of a court to attempt to save them from the consequences of what it may conceive to be a misguided policy by ignoring or misinterpreting their expressed will. This is so even though we should think that a system of trial by jury in which the judge is reduced to the status of a mere monitor cannot be expected to survive.

The judgment is affirmed.

ROSSMAN, J., specially concurring.

I do not believe that the attacked verdict is excessive, even under the tests which were employed prior to the adoption of Article VII, Section 3, Constitution of Oregon. I do not think that this court is authorized to

---

* With the apparent exception of Mississippi. See, Lewis v. Black, 27 Miss. 425.

set it aside. Chancellor Kent, in language which has been many times quoted with approval, said:

" * * * The damages, therefore, must be so excessive as to strike mankind, at first blush, as being, beyond all measure, unreasonable, and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line; for they have no standard by which to ascertain the excess."

*Coleman v. Southwick*, 9 Johns. (N.Y.) 45, 6 Am. Dec. 253.

The plaintiff was entitled to an award of compensatory damages in a sum representing just compensation to her for all injuries which she sustained as a result of the defendant's wrongful conduct. The jury was authorized to include amounts for the mental suffering, if any, arising from the indignity, disgrace and humiliation which the plaintiff underwent.

The physical injury which the plaintiff sustained was minor, and, in all likelihood, the award of $5,000 compensatory damages was based only in part upon it. The jury had a right to believe, however, that the plaintiff sustained intense mortification when the defendant's son and one of the latter's employees, who wore a police uniform, seized the plaintiff, booted her around, detained her in one of the defendant's rooms, and later placed her in the police patrol wagon which carted her off to the police station. This humiliating treatment which she underwent was experienced in the presence of a large assemblage of persons. If the plaintiff was all that a young woman should be, and we have no right to say that she was not, the award of $5,000 damages cannot be held to outrage one's sense of justice.

It is sometimes said that punitive damages must be in reasonable proportion to the compensatory damages. In the case at bar the compensatory and the punitive damages are in like amount. Section 8-406, O. C. L. A., authorizes the recovery of treble damages against anyone who wilfully injures or destroys a tree. The purpose of trebling the damages, obviously, is to deter others from committing similar offenses. Thus, awarding punitive damages in treble the amount of compensatory damages has been recognized by the legislature of this state as proper—at least, in the instance of injuries to trees. In the case at bar, the jury doubled the compensatory damages. Manifestly, the well-being of a young girl is no less important than that of a tree. In *Pelton v. General Motors Acceptance Corp.*, 139 Or. 198, 7 P. 2d 263, 9 P. 2d 128, this court sustained as valid an award of $5,000 punitive damages. The compensatory damages were $255.00. The action was for conversion. No element of physical violence, personal indignity or mortification was present in that case. I do not believe that it can be said that the jury's action in awarding this very young woman $5,000 punitive damages was unwarranted.

I conclude that the verdict must be sustained against the appellant's attacks. The above is the disposition which, I believe, should be made of this appeal. But I shall go on and state my opinion of the interpretation which the majority place upon Article VII, Section 3, Constitution of Oregon.

The adoption of Article VII, Section 3, Constitution of Oregon, was intended to effect a substantial change in the treatment of motions for new trials. The adoption of new procedure and the supplanting of old expressions with new ones are generally made for the purpose of getting rid of old ideas and ushering in new

ones. Article VII, Section 3, was intended, of course, to yield new results. Shortly after it was made a part of our constitution the courts of this state construed it to mean that it ended the power of trial judges to set aside verdicts which they deemed unreasonably large. Thus, it terminated the practice of granting new trials on account of excessive verdicts. The holdings just mentioned attracted wide attention, and it is permissible to infer that they conformed to the construction which the people intended should be placed on Article VII, Section 3, because no effort was made to discard those judicial interpretations through a rephrasing of the constitutional provision. After those early pronouncements were made a better understanding of the powers over verdicts reserved to the courts by Article VII, Section 3, would have been facilitated had the expression, "excessive verdict", been abandoned. Article VII, section 3, reserves to the courts, Circuit and Supreme, power to re-examine a verdict if the court "can affirmatively say there is no evidence to support the verdict." Whenever a court can so say, it has a duty to perform.

The work performed by a jury in assessing damages, that is, in computing and estimating them, is materially different from the work performed in "finding" such a fact as the rate of speed of an automobile. The jury "finds" the rate of speed of the automobile by listening to the witnesses and by determining their credibility, in the event that the testimony is contradictory. But the amount of the damages is the result of computation, assessment and estimation. It is reached by applying the law governing damages to the injury as found by the jury. Discretion has its proper place in making the assessment. Notwithstanding this difference between the finding of a fact and the assessment of damages,

the amount awarded is generally deemed a fact. The distinction may prove to be material in the event that a litigant against whom damages have been assessed should claim that, although the verdict is regular upon its face, no damages, in fact, were actually assessed because the jury acted arbitrarily or gave itself over to passion and prejudice. In that event, he would argue that he had not been accorded due process of law. This case calls for no pronouncement of views upon those subjects nor for the citation of authorities. There is no basis in this case for believing that the jury acted irregularly. If in the future we should be confronted with contentions of the kind just mentioned, we should not be embarrassed with anything now said concerning our past decisions which spoke upon the subject.

With these reservations and limitations, I concur in the opinion of the Chief Justice.

BAILEY, J., Specially Concurring.

Defendant, in his appeal, contends that the verdict is excessive and that this Court has the authority and power, under the provisions of article VII, section 3, Oregon Constitution, to retry the cause and to enter such judgment as it thinks proper. It is not claimed by defendant that the Circuit Court committed any error in the trial of the case or that plaintiff was not entitled to recover for the alleged injuries which she suffered. His only complaint is as to the amount of the verdict.

Article VII, section 3, guarantees to the litigants in this case the right to have the issues here involved tried by a jury. One of those issues is the amount which plaintiff is entitled to recover. The jury *found* that she was entitled to recover a definite amount. Since this

Court, as stated in the majority opinion, "has reached the conclusion that it cannot say, either from the size of the verdict itself or from any incident of the trial, that the damages were given under the influence of prejudice and passion", and inasmuch as there was no error committed by the Circuit Court, I am unable to understand how this Court can find that the verdict is excessive without reexamining a "fact tried by a jury." The following excerpt from the majority opinion clearly and correctly answers that matter "All that the court may do, so far as the facts are concerned, is to examine the record to determine whether it 'can affirmatively say there is no evidence to support the verdict'. It has not been disputed, and cannot be, *that inquiry into the evidence to determine whether a verdict is excessive* and for that reason justifies the granting of a new trial, *involves the examination of a question of fact.* The decisions of the court construing Art. VII, section 3, are founded on that premise." (Emphasis supplied).

I cannot concur in the conclusion reached in the majority opinion that the damages awarded plaintiff are excessive, for to do so would amount to a reexamination of a fact tried by a jury in contravention of article VII, section 3. I do, however, concur in the result reached by the majority of the Court that we are in this case precluded from a reexamination of the facts herein tried by the jury, some of which facts are the compensatory and punitive damages awarded plaintiff. My views on this subject are more fully expressed in the opinion written by me in *Johnson v. Ladd,* 144 Or. 268, 280, 14 P. (2d) 280, 24 P. (2d) 17, 19.

BRAND, J. Concurring in part; dissenting in part.

I shall first state the extent of my concurrence and then set forth the limits and grounds of my dissent. On

the facts I agree that there is no evidence that the plaintiff was seriously injured and I concur in the conclusion that the verdict of $10,000 is excessive in respect both to compensatory and punitive awards. With considerably less confidence I agree that it is not sufficiently established in this case that the verdict was the product of passion and prejudice. I welcome the decision of the majority to examine anew the question of the power of both circuit and supreme courts to grant new trials. In this case we are concerned with the construction of the following portion of the constitutional amendment which was adopted by the people of Oregon in 1910:

"In actions at law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of this State, unless the court can affirmatively say there is no evidence to support the verdict. * * *" Constitution of Oregon, Article VII, Section 3.

In construing the 1910 amendment it must be borne in mind that it constitutes a limitation upon the judicial power of a coordinate branch of the government. In determining the extent of the limitations upon judicial power it is relevant to consider that the power to grant a new trial is a common law right inherent in all courts of general common law jurisdiction. *Shain v. Meier & Frank Co.,* 140 Or. 518, 13 P. 2d 360. The statutory provisions prescribing the grounds for a new trial do not restrict the trial court to the grounds specified in the statute. *Pullen v. Eugene,* 77 Or. 320, 146 P. 822, 147 P. 768, 147 P. 1191, 151 P. 474. Again we have held that the statutory provisions respecting new trials are remedial and should be liberally construed. *Cicrich v. State Industrial Accident Commission,* 143 Or. 627, 23 P. 2d 534.

In view of these established principles, grounded as they are upon American-Anglo common law, we should not lightly adopt a construction of the 1910 amendment which would emasculate the judicial power beyond the necessary implication of the words used nor should such amendment receive a construction which would place it in conflict with the due process clause of the federal constitution or the equivalent provisions of our own constitution.

On the other hand it is apparent that by the adoption of Article VII, Section 3, it was intended to impose a substantial limitation upon the power of the courts, and I agree that it must be so construed as to effectuate that purpose. Prior to the 1910 amendment, trial courts had inherent power to grant new trials or to require a remittitur as a condition of the denial of a motion for a new trial whenever, in the opinion of the court, the verdict was against the clear weight of the evidence. *Multnomah County v. Willamette Towing Co.,* 49 Or. 204, 89 P. 389. That power was expressly confirmed by O. C. L. A., Section 5-802 (6), which provides that a new trial may be granted for insufficiency of the evidence to justify the verdict. The rule of common law and of statute received its classic interpretation in opinions by Wolverton, C. J. and Robert S. Bean, C. J. respectively. *Serles v. Serles,* 35 Or. 289, 57 P. 634 and *Multnomah County v. Willamette Towing Co.,* supra. Under subsection 6 of O. C. L. A., Section 5-802, it was formerly held that damages awarded by a jury may be so excessive and so opposed to the weight of the evidence as to justify the granting of a new trial, even though the verdict was not influenced by passion or prejudice. *Adcock v. Oregon Railroad Co.,* 45 Or. 173, 77 P. 78, *Hust v. Moore-McCormack Lines, Inc.,* 180 Or. 409, 436, 177 P. 2d 429.

Confining the issue, for the moment, to the class of cases just discussed in which there is an excessive award of compensatory damages but no finding of passion or prejudice, I concur in the conclusion of the majority to the effect that the constitutional amendment has deprived the trial courts of their former power to require a remittitur or to grant a new trial because of such excessiveness, and I agree that this court is also forbidden to take like action. If we are to recognize the clear intent of the constitutional amendment to restrict trial courts from exercising powers previously possessed, then we must at least accord to the amendment the effect indicated. It may be said that it is unthinkable that a party should be awarded damages in a sum which is clearly more than that to which he is entitled under the facts and the law, but the question is; in whom has the constitution vested the power to decide the amount to which a litigant may be entitled. In this case the constitution has unwisely, as I believe, vested the ultimate power of determination in the jury and not in any court.

Since it does not sufficiently appear that the verdict was the product of passion or prejudice, the majority states that it is "inappropriate to discuss the question." Nevertheless, cases are cited with expressed approval which lay down a broader rule than is necessary for the decision of this case, and which state in effect that no court can grant a new trial even though the verdict may have been the product of passion and prejudice. In most instances such broad statements were unnecessary to the decision of the case since the existence of passion and prejudice was not established. The majority opinion not only cites such decisions as *Buchanan v. Lewis A. Hicks Co.,* 66 Or. 503, 133 P. 780, 134 P. 1191, and *Timmins v. Hale,* 122 Or. 24, 256 P. 770,

but it affirmatively states that the mandate of Article VII, Section 3 "is transgressed every time that a court undertakes to revise or correct a jury's finding òf fact (unless this be done by the Supreme Court where there is error in the record * * *)." The opinion continues, "All that the court may do, so far as the facts are concerned, is to examine the record to determine whether it 'can affirmatively say there is no evidence to support the verdict'." Since the majority has elected to examine the question anew, it should not, in my opinion, add the weight of its approval to a rule, whether found in dicta or in ratio decedendi which would deny to every court the power to do justice when it clearly appears that a jury has been moved to render its decision under the influence of passion or prejudice. I shall not burden the record with extended discussion of this question, because, notwithstanding the broad language of the majority opinion, the question as to the effect of passion and prejudice is not before us in this case. I shall merely state in outline my views.

The statute, which is only declaratory of the common law, sets forth among the grounds for the granting of a new trial:

"(1) Irregularity in the proceedings of the court, jury, or adverse party, or any order of the court, or abuse of discretion, by which such party was prevented from having a fair trial;
"* * *
"(5) Excessive damages, appearing to have been given under the influence of passion or prejudice;
"(6) Insufficiency of the evidence to justify the verdict or other decision, or that it is against law;" O. C. L. A., Section 5-802.

Prior to the 1910 amendment new trials were

granted, either on account of excessive damages given under the influence of passion or prejudice, (subsection 5), or on account of the insufficiency of the evidence to justify the verdict, but the distinction between cases arising under subsections 5 and 6 was of the essence. In an opinion by Chief Justice Robert S. Bean this court said:

"It is contended, however, that in this case the court could not have required the plaintiff to remit one half of the verdict in her favor, except upon the theory that the jury were influenced by passion and prejudice. If such had been the view entertained by the court, the proper practice would undoubtedly have been to grant a new trial, as the part of the verdict allowed to stand would have been as much tainted by passion and prejudice as that which was remitted. Where the damages assessed are excessive, in the opinion of the trial court, or not justified by the evidence, the error may in many cases be obviated by remitting the excess; but, where it clearly appears that the jury were influenced by passion or prejudice, the error cannot be cured by merely remitting a part of the verdict, but it must be entirely rejected, since the effect is to cast suspicion on the conduct of the jury and their entire findings: Safford v. Pawtucket Haircloth Co. 2 Cliff. 82 (Fed. Cas. No. 13,275); Lowenthal v. Streng, 90 Ill. 74; Chicago & N. W. R. Co. v. Cummings, 20 Ill. App. 333; Steinbuchel v. Wright, 43 Kan. 307 (23 Pac. 560)."

The same rule was recognized in the recent case of *Hust v. Moore-McCormack Lines, Inc.*, supra.

There was sound reasoning which supported the distinction in the treatment of verdicts merely excessive under subsection 6 on the one hand, and verdicts excessive because of established passion and prejudice on the other. In cases under subsection 6 the courts held

in substance that the parties had received a fair trial though the verdict was not supported by the evidence. The verdict, as such, was therefore upheld, although a remittitur was required as a condition for the upholding. In cases under subsection 5 a remittitur was deemed impossible because passion and prejudice vitiates the entire proceeding. In cases of that sort the parties never had a fair trial and so it was held that the only remedy was a trial before a new and impartial jury. The vital question in such cases was not whether the verdict was too large, but whether there had been the substance of fair trial. The protection of the constitutional right to a fair trial has always been the function of the judiciary. As said by this court:

" * * * plaintiffs are entitled to a fair and full hearing on the merits as to these allegations. To deny them this right would be to deprive them of the constitutional guaranty that 'every man shall have remedy by due course of law for injury done him in his person, property or reputation'." *Carter v. La Dee Logging Co.*, 142 Or. 439, 459.

To the same effect was the holding in *Cicrich v. State Industrial Accident Commission,* 143 Or. 627, 23 P. 2d 534. In that case the court said:

"It is no infringement on the province of the jury for a trial court, in the exercise of its legal discretion, if it believes that on account of an error of law or for any cogent reason a party has not had a fair and impartial trial, to grant a new trial and again submit the issues of fact to a jury. The constitution, as amended in 1910, was never intended to prevent this."

Reference to the first subsection of O. C. L. A., 5-802 shows that new trials may be ordered in the event of:

"(1) Irregularity in the proceedings of the court, jury, or adverse party, or any order of the

court, or abuse of discretion, by which such party was prevented from having a fair trial;"

In the case of *Veazie et al. v. Columbia & Nehalem River R. R. Co.*, 111 Or. 1, 224 P. 1094, it was held that Article VII, Section 3 has made no change in that subsection of the statute. Subsection 1 is merely a statutory declaration of a constitutional right to a fair trial and I cannot believe that the 1910 amendment was intended to render verdicts invulnerable to any judicial control if it clearly appears that they were rendered under the influence of passion and prejudice. I assume that the majority opinion has not foreclosed the issue which I have discussed since it affirmatively states that it is deemed inappropriate to discuss the question. I have only deemed it proper to present the foregoing considerations by reason of the fact that cases have been cited with apparent approval, with which I agree, if their application is limited to merely excessive verdicts, but which would impinge upon constitutional right if applied to verdicts rendered under the influence of passion and prejudice.

I now approach the problem of punitive damages.

Aside from the limitations imposed by Article VII, Section 3, it would seem clear that the circuit court has the power in its discretion to order a new trial on the simple ground that the punitive damages were excessive, or to require a remittitur in the alternative. As stated in the majority opinion, "Nevertheless, 'The power of the court to set aside a verdict for exemplary damages is the same power, and is exercised upon the same principle, as in any case of excessive verdict,' ", citing 1 Sedgwick 756, Section 388. We have already seen that prior to 1910 Oregon courts could, and did, grant new trials where the verdict was excessive or

against the weight of the evidence, though not induced by passion or prejudice, and that therefore the trial court could, in its discretion have done so in this case. I think there will be no disagreement on this point, but the majority holds that there is no valid distinction so far as the present question is concerned between compensatory and exemplary damages. I suggest that there is a very real distinction and one which renders the provisions of the first sentence of Article VII, Section 3 inapplicable to punitive damages, leaving them subject to such control by the trial court as was exercised prior to 1910. We find no discussion in any previous case concerning the effect of Article VII, Section 3 upon the power of the court to deal with excessive punitive damages. The question is a novel one.

The relevant constitutional provision is, " * * * the right of trial by jury shall be preserved, and no *fact tried by a jury* shall be otherwise re-examined in any court * * *" (Article VII, Section 3). The comments of learned writers concerning the rule which permits the award of punitive damages in tort actions appear in the majority opinion and they are pertinent. "The idea is wrong. * * * It is an unsightly and unhealthy excrescence, deforming the symmetry of the body of the law." It is "a sort of hybrid between a display of ethical indignation and the imposition of a criminal fine. * * *" The fundamental basis of the law of torts is the redress of private wrongs, not the discipline of wrongdoers, yet our law permits the award of punitive damages. What are the pertinent distinctions between the assessment of compensatory damages and the imposition of punitive damages? Clearly, it is a *fact tried by a jury* when that body determines the amount of compensatory damages. Their legal duty is to fix an amount in money which is the equivalent, as

near as may be, of the injuries suffered. The yardstick is compensation. They may award only such damages as are found to have been proximately caused by the act of the wrongdoer and only such as are established by the evidence. This court recently said:

" * * * As a general rule, compensation in money must be fixed according to some standard which will admeasure the loss in terms of pecuniary value, if this can be done, and the measure applied must be a real and tangible one. 17 C. J., Damages, section 166C; 25 C. J. S., Damages, section 71. We think that the value of the time consumed and expenses involved herein were matters that were susceptible of proof within a reasonable degree of certainty. The court cannot base an award of damages upon mere speculation, conjecture, or surmise. Porter Const. Co. v. Berry, 136 Or. 80, 93, 298 P. 179; 15 Am. Jur., Damages, section 23 * * * Beisell et ux v. Wood et ux., 182 Or. 66, 185 P. 2d 570.

In the majority opinion it is pointed out that there is a very large discretion given to the jury even as to compensatory damages, and the opinion adds, "if a verdict for exemplary damages may be set aside for abuse of the jury's discretion, then the same power would exist as to all those classes of actions", including those for compensatory damages where discretion is involved. To be sure, a large discretion is vested in the jury in awarding compensatory damages for tort. The loss of an arm or a reputation cannot be scientifically estimated in money, yet the loss must be measured. But the jury's discretion in such a case is guided and controlled by rules of law and by facts in evidence from which the amount of damage is determined. Notwithstanding the necessary exercise of controlled discretion, the measure is still that of compensation and the materials for fact finding are found in the evidence.

The case of punitive damages is essentially different. The existence of malice is a fact and one to be found by the jury, but having found malice, the jury has a discretion wholly different in character from that which its exercises in assessing compensatory damages. A litigant may allege and prove malice and pray for punitive damages, yet, as the majority states, the jury has entire discretion to refrain from giving any punitive damages though all the elements of malicious and damaging misconduct may have been established. Again, if the jury elects to award such damages, the amount which may be assessed is unlimited unless the trial court has the power which is denied by the majority opinion. The elements of compensation and of proximate cause are irrelevant. The rule forbidding speculative damages does not apply. In place of the common law rules concerning the measure of compensatory damages as proven by the evidence, this court has defined the function of the jury concerning punitive damages in terms of almost unbridled discretion. Such rule as there is authorizes and requires the jury to act upon broad issues of public policy outside of and beyond the evidence.

" * * * Exemplary, punitive or vindictive damages involves the blending of the interests of society in general with those of the aggrieved individual in particular. The generally accepted doctrine is that such damages are awarded by way of punishment to the offender and as a warning to others, or, according to some authorities, by way of example: 17 C. J. 968, Section 268." *Martin v. Cambas*, 134 Or. 257, 261.

In the trial of a criminal case the jury finds the facts and two days thereafter the judge imposes sentence. I have never heard it suggested that the judge in so doing is finding the facts. He is exercising a

purely discretionary power to impose punishment, a power, which is limited by the statutory maximum sentence which may be imposed. In the same manner the jury, in determining whether to assess punitive damages and in what amount, exercises a purely discretionary power based upon the facts which it has already found, a power which resembles that of the trial judge, except for the fact that his discretion is limited by statute whereas their's is without limit unless the court imposes one. Subsection 1 of O. C. L. A., 5-802 which has never been modified by Article VII, Section 3 authorizes the granting of a new trial for "Irregularity in the proceedings of the court, jury, or adverse party, or any order of the court, or abuse of discretion, by which such party was prevented from having a fair trial;" That section is applicable here.

Giving full credence to the plaintiff's story in the case at bar, and ignoring the persuasive testimony which contradicts portions thereof, we find that she has received $5,000 of compensatory damages for her paltry injuries and that the jury has then awarded by way of punishment and as an example to others, a fine of $5,000 against the defendants for an offence which, if tried in a justice court, would probably have received the maximum fine of $50. In the exercise of pure discretion based on its conception of public policy, the jury was guilty of an abuse of its power requiring a remittitur or a new trial. In my opinion the words, "fact tried by a jury", as employed in Article VII, Section 3, were intended to cover the special or general findings of a jury upon the ordinary issues raised by the pleadings and evidence, and as to which it is their duty to make findings. I do not believe that it was ever contemplated that the exercise of pure discretion by a jury in the imposition of punishment or in the effort to deter

others should be deemed a *fact tried by the jury* or protected from the wise exercise of common law powers by trial courts which powers are possessed, so far as I know, in every state of the union except Oregon.

A motion for a new trial was filed in the circuit court on the ground of the excessiveness of the verdict. It is obvious that the trial court denied the motion for a new trial because it was believed that Article VII, Section 3 had deprived the court of the power to grant one. The trial court has never exercised its discretion as to whether the verdict for punitive damages is excessive. I think the case should be remanded to the circuit court with directions to exercise its discretion in determining whether or not that portion of the verdict is excessive. There is ample authority for this procedure. *Serles v. Serles,* supra, and *Hust v. Moore-McCormack Lines, Inc.,* supra. For the reasons stated, I dissent from that portion of the opinion of the majority which holds that punitive damages are protected by the provisions of Article VII, Section 3 of the constitution.